## ABIGAIL CUTLER *versus* REBECCA TUFTS.

J. C. having inherited one fourth part of certain land which had been set off to the widow of W. C. for her dower, and having purchased of T. G. in 1793, for 700 dollars, two other fourths, conveys to J. T., in 1799, for 350 dollars, " one half of all that part of the real estate of W. C. which was set off to the widow, which was conveyed to me by T. G., reference to his deed being had, meaning to convey by this instrument the full one half of the above described estate as the same is now in common and undivided;" and in 1811, he releases to J. T. all his right in the rest of the dower land. In 1817, J. T. reconveys to J. C. an "undivided moiety of certain real estate, the same being a part of the real estate of W. C. and set off as dower, &c., *meaning hereby to reconvey to J. C. the same premises that J. C. conveyed to me in 1811.*" It seems, that one half of the dower land passed by the first deed of J. C. to J. T.; but it was *held,* that if only a fourth passed, yet that J. T.'s deed to J. C. passed a moiety of the dower land, either according to the intention of the parties, or if not, because the clause above italicized was not a reservation, exception, or explanation of the preceding words of grant, but was repugnant to them and therefore void.

UPON a case stated, it appeared that this action was brought to recover 50 dollars, received by the defendant for rent of part of certain land, the whole of which had been set off to the widow of one William Cutler for her dower. The facts will be found in the opinion of the Court. If the Court should determine that one half of the dower land passed by the deed hereafter mentioned of John Tufts to James Cutler, the defendant was to be defaulted ; but if they should determine that only one quarter passed, the plaintiff was to become nonsuit.

The case was briefly spoken to at this term, and afterwards argued in writing by *Stearns* and *Russell* for the plaintiff, and *Hoar* for the defendant.

For the *plaintiff* were cited, *Adams* v. *Frothingham,* 3 Mass. R. 361 ; *Worthington* v. *Hylyer,* 4 Mass. R. 205 ; Shep Touch. 87, 88, *rules* 5, 7 ; *Thomas* v. *Howell,* 4 Mod. 69 ; Vin. Abr. *Grants,* (*H. a.* 10) *pl.* 4, and (*H.* 13)

---

Cutler
v.
Tufts.

*pl.* 25 ; 1 Wood's Conv. (Dubl. ed. 1792, *8vo.*) 328, 330 ; *Sherley* v. *Wood*, Hob. 72 ; *Stukeley* v. *Butler*, ibid. 170 ; Com. Dig. *Fait, E,* 7, cites 2 Roll. Abr. 455, *l.* 1 and 5 ; Bac. Abr. *Grants, I,* 1, cites Mo. 881.

For the *defendant*, Shep. Touch. 78, (and note citing Cro Eliz. 6,) 86, 87 ; *Wiltshire* v. *James*, Dyer, 59 *a ;* Bac. Abr. *Grants, I,* 1, cites Mo. 880 ; *Whitman* v. *Hapgood*, 10 Mass. R. 439.

The opinion of the Court was read as drawn up by

*April term 1826, at Concord.*

PARKER C. J. There is considerable difficulty in ascertaining the true intent of the parties to the conveyance made by John Tufts to James Cutler in 1817, without resorting to technical rules of construction, which may or may not be conformable to that intention. The ambiguity is not of a nature to be explained or removed by extrinsic evidence of what the parties intended, for it exists in the deed itself ; and so the difficulty must be solved by a judicial construction of the instrument itself, in connexion with other instruments to which it refers, and having regard to the state of the title between the parties as it may appear from deeds between the same parties.

By the deed first mentioned John Tufts conveyed to James Cutler " all his right and title and interest in and to one undivided moiety or half part of certain real estate situate in the towns of West Cambridge, Lexington and Cambridge, the same being a part of the real estate of the late William Cutler deceased, and set off as dower to the widow Rebecca Cutler." Had the description ended here, no question could have arisen which could not have been settled by recurring to the records of the probate office and ascertaining from thence what portion of the estate of William Cutler had been assigned to the widow for her dower by metes and bounds. *That* is the subject matter of the conveyance, and if Tufts had title therein, one undivided moiety thereof passed by the deed to J. Cutler. But a clause is added, which has produced the controversy, viz. " meaning hereby to *reconvey* to the said James Cutler the same premises, with their appurtenances, that the said Cutler conveyed to me by his deed dated September 26, 1811." In order to raise the ambiguity it is assumed, that by this last

deed Cutler conveyed to Tufts a fourth part only of the dower land, so that the deed of Tufts, if it passed only what was conveyed by the deed of Cutler, passed only half of that moiety, or an undivided fourth part of the land in question. If this was really what was intended by Tufts in his deed to Cutler, it is remarkable that he should by words convey an undivided moiety, instead of a fourth part, which might have been done quite as conveniently, leaving no ambiguity to quarrel about. And I do not see any great difficulty in so construing the whole of the deed as to give a sensible construction to the supposed restrictive clause, without impairing the effect of the preceding description of the grant. James Cutler inherited one fourth part of the dower land from his father William Cutler. He had purchased one moiety of the same land, which had descended to his eldest brother William, and had been conveyed by him to Thomas Goddard. On the 31st of March, 1798, Goddard conveyed this moiety to James Cutler for the consideration of *seven hundred* dollars. The other fourth part had descended to Rebecca Tufts the defendant, widow of John Tufts, formerly Rebecca Cutler, the plaintiff's sister. At the time of this last conveyance and until the 25th of March, 1799, James Cutler was the owner of three fourth parts, and John Tufts, in right of his wife, of one fourth part. On the last mentioned day, James Cutler, in consideration of *three hundred and fifty* dollars, made his deed of release and quitclaim unto John Tufts, in fee, of " *one half* of all that part of the real estate of William Cutler late of Cambridge deceased, which was set off to the widow for her dower or thirds in said deceased's estate, quantity and quality, *which was conveyed to me by Thomas Goddard*, as by his deed bearing date the 31st of March, 1798, reference thereto being had, all which will more fully appear, meaning to convey by this instrument the full one half of the afore-described *estate* as the same is now in common and undivided." On the 26th of September, 1811, James Cutler released to John Tufts all his right, title and interest in the estate in question, with other land. By virtue of these several conveyances, on the day of the execution of this last deed John Tufts became seised of the whole of the land, three fourths by purchase of

275

James Cutler, in his own right, and the other fourth part in right of his wife.

It may be doubted whether by the deed of the 25th of March, 1799, Cutler intended to convey the whole moiety which he had purchased of Goddard ; the consideration expressed is just one half of the consideration of his purchase from Goddard. He conveys " the full one half of all that part of the real estate &c. which was set off to the widow, &c., quantity and quality, *which was conveyed* to me by T. Goddard, &c., meaning to convey by this instrument the full one half of the *afore-described estate* as the same is now in common and undivided." The full one half of what estate ? Probably one half of the estate which he had purchased from Goddard was intended, for he had received one half of the price. It might perhaps be difficult to establish this construction in favor of Cutler, in a contest between him and Tufts respecting the effect of this deed, and it is now immaterial, except from its bearing on the construction of the deed now in controversy ; for whether this conveyance left Cutler the owner of a moiety or a fourth part, the whole of his title passed from him on the execution of the deed of the 26th of September, 1811, he by that deed selling all his right and title, without mentioning the proportion then intended to be conveyed. Tufts remained thus seised of the whole until 1817, when by deed of that date he released all his right to Cutler " in, to and of *one undivided moiety* or half part of certain real estate situate in the towns of West Cambridge, Lexington and Cambridge, the same being a part of the real estate of the late William Cutler deceased, and set off as dower to the widow Rebecca Cutler."

This is explicit and unambiguous, and by the terms of the deed thus far, there could be no question that Tufts meant to convey one undivided moiety of the estate which had been the subject of all these conveyances.

Then comes the clause 'which has created the difficulty, viz. " meaning hereby to *reconvey* to the said James Cutler the same premises with their appurtenances, that the said Cutler conveyed to me by his deed dated September 26, 1811."

Without going to the question of repugnancy between this

clause and the one immediately preceding, which being a mere technical rule might force upon us a construction different from the intent of the parties and therefore ought not to be acted upon but in the last resort, I think, upon the broad rule of construction of instruments, viz. the intention of the parties,[1] the case is stronger for the plaintiff than the defendant; and therefore, as the words of the deed are to be taken as the grantor's words, if there be an ambiguity, it should be construed against him and in favor of the grantee.

He means, he says, to reconvey the same premises that Cutler conveyed to him by his deed dated the 26th of September, 1811. What was conveyed by that deed? This is doubtful in respect to the dower land, for the reasons above stated, and for the further reason, that the consideration of this conveyance was large enough for an entire moiety of the land, whereas the consideration of the deed of March 1799, was just one half of the sum which Cutler had given a short time before for the whole moiety.

These facts, though not decisive of the construction of the two deeds, yet furnish strong ground to believe, that the parties understood that the first deed had conveyed but a moiety of the moiety purchased of Goddard, and that the deed of the 26th of September, 1811, conveyed a full moiety; and that it was for this reason that reference was made in this deed of Tufts to Cutler to that last mentioned deed; and if it were not so, it is unaccountable that Tufts, intending to sell only a fourth, should have expressly sold a *moiety* of the dower land. That the parties were not very precise in their reference to the deed, appears from another circumstance. Tufts says, " meaning hereby to *reconvey* the same premises which said Cutler had conveyed by his deed," &c. Now if full operation should be given to the explanation, as it is called, the other land conveyed by Cutler to Tufts by that deed would pass as well as the dower land, and yet it was manifestly the intention of Tufts to convey only the dower land. Taking the whole of the deed together into a view, with reference to the former

277

---

[1] As to the force of intention in the construction of deeds, see *Ingell* v. *Nooney*, 2 Pick. (2nd ed.) 366, notes.

deeds and the state of the title between the parties, it would be far from a strained construction, to make the deed from Tufts to Cutler convey a complete moiety, without resorting to the repugnancy between the two clauses.

But supposing this construction to be doubtful, and that he two clauses cannot stand together consistently, so that the meaning of the parties may be fairly drawn from them, we are nevertheless all very clearly of opinion that the plaintiff ought to recover. The words of the deed descriptive of the interest intended to be conveyed, are wholly without ambiguity. The grantor releases " all his right, title and interest in, to and of *one undivided moiety* of certain land, situated &c., the same being a part of the real estate of, &c., and set off as dower to the widow Rebecca Cutler." The succeeding clause, by reference to another deed and by implication only, would reduce this moiety to a fourth part. Is this not repugnant ? Is it not the same as if the grantor had said, I sell one undivided moiety, ·meaning hereby to sell one undivided fourth part ? And if it is so, then most clearly, by reason as well as by the authorities, the latter clause ought to be rejected.[1] It is not an explanation, but a direct contradiction. The words cannot stand together, and the grantor shall not have the benefit of such an unjust interpretation of words which he has himself introduced into the instrument, as would give him the right to destroy his own grant. This point has been well argued by counsel exceedingly well qualified to manage a technical combat of this nature. It is admitted by the counsel for the defendant, that if this second clause is repugnant to the first, it must be rejected, and therefore he has attempted to consider it as amounting to an exception of a part of what was granted, or an explanation of the preceding clauses ; but we are unable to find any thing but a flat contradiction

An exception, says Lord *Coke*, 1 Inst. 47 *a*, is ever of part of the thing granted and of a thing *in esse*, as an acre out of a manor ; that is, out of a *general* a part may be excepted, but not part of a certainty, as out of twenty acres, one. Now in the case before us the thing granted is certain, that is, a

---

[1] *Sprague* v. *Snow*, 4 Pick. 54. See *Payne* v. *Parker*, 1 Fairfield, 178.

moiety of a certain tract of land ; an exception therefore of one half this moiety would be like a grant of twenty acres excepting one.   It is not a *reservation*, for that must be of some new right not *in esse* before the grant, as of rent &c., or perhaps of some preëxisting easement.   But it is said, it is an *explanation* of the preceding clause, and as such may limit and restrain the effect of the foregoing words ; and an example from Moore, 880, is cited in proof of this position.   The general position laid down in that case is, that if a thing be granted generally and then comes a *videlicet* which destroys the grant, it is void, being repugnant to the thing first granted ; as if there be a demise of a parsonage, with the lands and woods, except the woods, the exception is void, because repugnant, though if woods had not been mentioned before, the exception would be good, because then there is no repugnancy.   But the passage cited and relied upon by the defendant's counsel is this, — if the *videlicet* or proviso be *only explanatory* and not repugnant to the grant, it will be good ; — and as an example it is stated, that if an advowson be granted, *viz.* to present every second term, this is good ; the *videlicet* being only explanatory. This case has certainly the appearance of favoring the defendant's position, as it is stated in Bacon's Abridgment, and in the argument.   Upon examining the case itself however in Moore, the difficulty is removed ; for it turns out to be a case put *arguendo* by one of the judges, and expressly denied to be law by *Hobart* C. J. and *Winch* J.   The same case is more fully reported in Hobart, 168, and the opinion of Lord Chief Justice *Hobart*, is therein stated at large ; in which he considers the legal effect of *videlicets*, provisos, *habenda* &c., and he lays it down as a general proposition, that though these several forms of expression may explain doubtful clauses precedent, and may serve to separate and distribute generals into particulars, yet that they can never be suffered to restrain or diminish what is expressly granted ; if they can be construed to have no other meaning, they are void for repugnancy.

It is worthy of remark, that in a work so generally correct as Bacon's Abridgment, the case of the advowson, as put by one of the judges in the case of *Stukely* v. *Butler*, should be stated as law, when in the very authority he cites for the posi-

279

Cutler
*v.*
Tufts.

tion it is expressly denied to be law by one half of the court, comprehending in that half the very eminent Lord Chief Justice *Hobart ;* and it is also remarkable that he should have cited Moore only, when the same case is reported in 2 Roll. Abr. 50, *pl.* 7, and much more extensively in Hobart's Reports.

For the reasons given in this opinion, and particularly because of the repugnancy of the clause relied upon by the defendant to the clear and explicit grant contained in the preceding clause, we are all of opinion that the plaintiff ought to recover. The defendant must therefore be defaulted.