## HARRY H. RICH *vs.* ALFRED KING.

### Penobscot.   Opinion January 5, 1918.

*Malpractice.   General rule as to duty of physician to inform patient of nature of treatment given.*

On report.   An action on the case whereby the plaintiff seeks the recovery of damages from the defendant for alleged malpractice in the exercise of his profession of physician and surgeon.   The writ is dated June 16, 1915.

Defendant operated in July, 1909, upon plaintiff who was suffering from appendicitis.   The plaintiff alleges that defendant, after the operation, told plaintiff that his appendix had been removed when in fact it had not been removed and that, in consequence of this statement, he suffered great pain and was put to great expense and suffered irreparable injury.   The plaintiff admits that no error was committed in what was done in performance of the operation.

It is the opinion of the court that the plaintiff has not supported his allegations by a preponderance of the evidence.

Action on the case to recover damages for alleged malpractice in treating plaintiff.   Defendant filed plea of general issue.   At close of testimony, by agreement of parties, case was reported to Law Court to be determined upon so much of the evidence as legally admissible, and in event that defendant was found liable the Law Court was to assess damages for plaintiff.   Judgment for defendant.

Case stated in opinion.

*F. Wade Halliday*, for plaintiff.

*William H. Gulliver*, for defendant.

SITTING: CORNISH, C. J., SPEAR, KING, BIRD, HANSON, MADIGAN, JJ.

BIRD, J.   This action on the case, whereby the plaintiff seeks the recovery of damages from the defendant for alleged malpractice in the exercise of his profession of physician and surgeon is before this court upon report to be determined upon so much of the evidence as is legally admissible.   The writ is dated June 16, 1915.

In brief, the declaration alleges that in July, 1909, the plaintiff "suffering from what is known as appendicitis" was operated upon by the defendant at his hospital and on the day following the operation was told by the defendant "that the appendix had been decayed and that he removed what was left of the appendix," that two or three days later defendant told plaintiff "that he now belonged to the no appendix class;" that after remaining in the hospital until the twenty-first day of August, 1909, plaintiff left the hospital without having been notified by defendant that his appendix was still in his abdomen and that it had not been removed; that a few months after leaving the hospital he was attacked with pains in the abdomen, as before the operation, and that, with his knowledge that the appendix had been removed, his physician could not determine the nature of his ailment; that he suffered many subsequent attacks of like nature; that on the twenty-second day of December, 1912, he was attacked with most severe pains in the region of the appendix, when Dr. Simmons of Bangor was called, who after removing him to Bangor, immediately operated and found the plaintiff's appendix in his body, decayed and rotten, whence it was removed by Dr. Simmons. The declaration continues: "The plaintiff says that it was the duty of the said defendant to notify him that the appendix had not been removed; that the defendant did not so notify the plaintiff; the plaintiff further says that it was an added duty of the defendant not to tell the plaintiff that he had removed said appendix from the body of the plaintiff when in truth and in fact he had not removed said appendix; that because the plaintiff was informed that his appendix had been removed and because the appendix had not been removed in fact, the plaintiff suffered great pain both bodily and mentally and was put to great expense for care, attention and nursing; and that the plaintiff was weakened in the abdominal cavity so that he could never be well again."

Disregarding the want of express allegations, the injuries alleged to have been suffered by plaintiff seem to be ascribed to the express statement of defendant to plaintiff that his appendix had been removed when in fact it had not been removed and is not based upon the alleged omission to declare to him that the appendix had not been removed and that it was still in his body. *Goodwin* v. *Hersom,* 65 Maine, 223.

In support of the allegation that defendant expressly declared to plaintiff that his appendix had been removed, the plaintiff introduces

evidence of two conversations with defendant. It is well first to dispose of that later in time. Its occurrence and nature are testified to by the plaintiff and his wife. Their evidence is to the effect that some two or three days after the operation at the hospital, the plaintiff, his wife and the defendant were in the room of the plaintiff engaged in conversation which turned to the subject of a base ball game in which Dr. King had taken part. The plaintiff remarked that he played when at school and defendant said "you can play on the non-appendix team now." Both the plaintiff and his wife admit that defendant spoke in a "joking way" and the wife states that the conversation was not of a serious nature. The court is clearly of the opinion that the statement of defendant made in the manner in which it was made and in a conversation of such character should not be considered sufficient evidence to sustain the grave charge made and alleged in the declaration.

The first conversation is testified to by plaintiff alone. He fixes its occurrence as shortly after the operation and before the other conversation above referred to (the declaration alleges it to be the day after the operation). The defendant was in his room and plaintiff details the conversation as follows: I asked him "in regard to my condition and Dr. King says; "we found your condition very bad," and I says, "Did you remove my appendix?" and he says, "We found the appendix decayed and partially sloughed off, and we removed what remained of the appendix." Other than the parties to the suit, no one appears to have been present. Dr. King denies that he ever told defendant that he had removed his appendix and states that when the operation was completed he knew that he had not removed the appendix and that he had removed nothing except the pus in the cavity of the abscess.

It may be well to state, as concisely as possible, the history of the operation. On the nineteenth day of July, the plaintiff, while at Brooks, was seized with intense pain in the region of the appendix; Dr. Kilgore was called and found "all the symptoms of pus in the abdomen"; plaintiff's wife, Mrs. Ada E. Rich, having already made arrangements with Dr. King, she and Dr. Kilgore took plaintiff by the first train next morning to the hospital. Arriving there about noon, Dr. King found the case so serious that he left his dinner and made preparations for an immediate operation which he performed in the presence of Dr. Kilgore. Both physicians say that a large abscess

was found; that the intestines were so inflamed and the condition of the plaintiff so serious that extensive exploration was highly dangerous; that the appendix was not removed nor was any attempt made to do so, and that the pus was drained from the cavity of the abscess. Dr. King states that in the examination of the cavity of the abscess which he felt he could safely make, he could not detect the presence of the appendix and that if he had he should have removed it. Subsequent measures were such as provided for continued drainage and healing of the wound. The plaintiff admits no error was committed in what was done in the performance of the operation.

Under the circumstances attending the operation the statement of the plaintiff that defendant told him that the appendix had been removed is grossly improbable. He was a surgeon of great skill and long experience. He had then no interest to state other than the truth. The plaintiff now has. But plaintiff at the time he alleges the conversation occurred must have within twenty-four or forty-eight hours suffered surgical shock and the shock following the administration of ether, for which he was a bad subject. His mind may have not comprehended clearly what took place and was said and he may have unconsciously intermingled what Dr. King or Dr. Kilgore or others truthfully told with conclusions of his own and figments of his own imagination.

While the plaintiff was at the hospital he had with him a memorandum or note book in which he from time to time made minutes of occurrences, many of them being of a most trivial and unimportant nature. In it occurs the following entry: "Tuesday, July 20, 1909 Went to hospital today accompanied by Ada. Dr. King operated on me in less than half an hour; in operating room nearly one hour; the appendix was all decayed and had pus which they removed, nearly one-half pint of pus; put packing in my side, ten yards of gauze." The entry is in substantial conformity with the testimony of Drs. King and Kilgore. The book contains, as the plaintiff admits, no entry of the conversation in which he alleges that defendant stated that he removed the remainder of the appendix. This omission and the entry already quoted are significant. We are forced to the conclusion that plaintiff has not sustained by a preponderance of the evidence the allegation of his declaration which we have been considering.

Nor is the allegation of the declaration that "it was the duty of defendant to notify the plaintiff that the appendix had not been removed; that the defendant did not so notify the plaintiff," assuming plaintiff not precluded from relying upon it for the reasons already stated, sustained by the evidence. Whatever the duty of defendant, he could state only what he knew and he testifies explicitly that at the time of the operation he did not know whether or not the appendix was still in the body of the patient. This evidence is uncontradicted.

Neither is the evidence tending to show that the appendix was found in the body of plaintiff at the time of the second operation satisfactory. The recurrence of the abscess does not, upon the evidence, indicate that it was due to the presence of the appendix or a portion of it. It might be due to other causes. On the occasion of the last attack of plaintiff, Dr. Simmons was called. After listening to the history of the case and making an examination, he communicated by telephone with Dr. Kilgore. At once he ordered plaintiff's removal to Bangor where, immediately upon his arrival, an operation was performed. Three physicians present at that operation, testify to the removal of a solid substance. All gave it but a casual examination. It was in the hands of but one. None states positively that it was a portion of the appendix. One has no opinion, another thinks it was appendix tissue but admits he did not have it in his hands and that it may have been something else, while the third who took it from the body gives no unqualified opinion, thinks it may have been appendix tissue but states that a microscopical examination would be needed for a positive determination. All this afforded but little more than an opportunity for a guess by a jury.

It is, however, unnecessary to come to a conclusion upon this matter.

The court is clearly of opinion that no breach of duty on the part of defendant by reason of any statement made to the effect that the appendix had been removed, as alleged in the declaration, is supported by the evidence.

In arriving at the conclusion which we have reached, the court has not found it necessary to make any findings of law as to the duty of a physician and surgeon in the premises but have assumed, without declaring, the law to be as plaintiff claims.

Judgment must therefore be entered for defendant.

*So ordered.*