Opinion delivered March 20, 1888.

---

No. 2462.

GULF, COLORADO & SANTE FE RAILWAY COMPANY
*v.* TOBE ELLIS.

1. RAILWAY CROSSINGS.—The doctrine announced in Gulf, Colorado & Santa Fe Railway Company v. J. C. Rowland (ante), to the effect that the owner of inclosed land who grants to a railway company a right of way through his inclosure, reserves a right to such ways over the track as are reasonably necessary to the use of his property; but that if his conveyance is absolute, in the absence of an existing statute making it the duty of the company to construct the crossings, he must put them in at his own expense, reaffirmed in this case, and applied to crossings desired on uninclosed land.

2. LEGISLATIVE ACT.—The act of March 23, 1887, in so far as it requires a.
railway company which had before its passage, secured by purchase an
unconditional right of way to make crossings when demanded, every·
mile and a half is unconstitutional—*aliter* as to rights of way acquired
since the passage of that aet.

APPEAL from Burleson.   Tried below before the Hon. I. B.
McFarland.

J. W. Terry, for appellant:   Cited article 14, section 1, Con-
stitution of the United States; section 10, subdivision 2; Con-
stitution of Texas, Bill of Rights, sections 16, 17, 19; article 12,
sections 5, 7; article 16, section 18.

That it impairs the obligation of contract, he cited Attorney
General v. Turnpike Company, 55 Pennsylvania State, 466;
City of Erie v. Erie Canal, 59 Pennsylvania State; Common-
wealth v. Pennsylvania Canal Company, 99 Pennsylvania
State, 41; People v. Plank Road Company, 9 Michigan, 284;
Commonwealth v. New Bedford Bridge Company, 2 Gray, 289;
Commonwealth v. Essex Company, 13 Gray, 239; Washington
Bridge Company v. State, 18 Connecticut, 52; Micou v. Bridge
Company, 47 Alabama, 656; The Binghampton Bridge Com-
pany, 3 Wallace, 51; Davis v. Gray, 16 Wallace, 203; Fletcher
v. Pech, 6 Cranch, 87; Cooley's Constitutional Limitations, fifth
edition, 712–714; Detroit v. Plank Road Company, 43 Michigan,
140; Lake Hill v. Rose Hill Company, 70 Illinois, 191; Los An-
geles v. Water Company, 61 California, 65; Commonwealth v.
E. & W. T. Company, 107 Pennsylvania State, 112.

That it takes or damages private property for public use
without compensation, he cited Millet v. People (Illinois), 15
American and English Corporation Cases, 1; State v. C., etc.,
Railway (Minnesota), 31 Northwestern Reporter, 365, Illinois
Central Railway v. Bloomington, 76 Illinois, 447; Old Colony
Railway v. Plymouth, 14 Gray, 155; B. & E. Railway v. Mid-
dlesex, 1 Allen, 324; State v. Noyes, 47 Maine, 189; Thompson
v. State, 3 Southwestern Reporter, 215; N. C. Railway v.
Baltimore, 46 Maryland, 425.

That it deprives of property without due process of law, he
cited Millet v. People (Illinois), 15 American and English Cor-
poration Cases, 1, and authorities there cited.

That it is retroactive, he cited Mellinger v. City of Houston,
68 Texas, 37; Fowler v. Eastern Railway, 18 New Hampshire,
546.

*Broadus & Banks,* for appellee:  Relied on the same author-
ities cited by them in Gulf, Colorado & Santa Fe Railway v.
Rowland, ante, page 298.

GAINES, ASSOCIATE JUSTICE.  This suit involves mainly the
same questions presented in that of this appellant against J.
C. Rowland, this day decided.  The counsel are the same in
the two cases, and recognizing the fact that many of the same
points are presented by the two appeals, they have submitted
them together.  The facts were admitted, and are substantially
alike in both cases, with this exception, that in the former the
crossing was demanded in Rowland's inclosure, and in the
present case the demand was for a crossing on appellee's land
at a point outside of any inclosure.

We are of opinion that the  principles laid  down in the opin-
ion in the former case apply to the case before us.  We there
determined that the owner of inclosed land who grants to a
railway company a right of way through his inclosure, re-
serves a right to such ways over the track as are reasonably
necessary to the use of his property, but that if his conveyance
is absolute, in the absence of an existing statute making it the
duty of the company to construct the crossings, he must put
them in at his own expense.  The right to a way over the rail-
road track grows out of the necessity of the case, and in many
instances this necessity is as great in case of uninclosed lands
as when they are fenced and used for farming or other pur-
poses.  For example, the railroad may intervene between the
owner's residence and his farm, or between his residence and
the public highway, or the portion of the land lying beyond
the railroad from his residence or farm may be that from which
he draws his supply of wood for fuel and other purposes.  But
in this case, as in the other, when he conveys the right of way
without a stipulation that the company shall construct his
crossings, he is held to have reserved his right to pass over the
road, burdened with the charge of making the necessary struc-
tures at his own expense.  It follows, therefore, that the grant-
ors of a right of way to a railroad company through uninclosed
land occupy precisely the same relations of property and con-
tract to the company as those who convey such right of way
through their inclosures, and that for the reasons given in the
Rowland case, the act in question must be held unconstitutional
as applied to the present case unless it be decided that appellee,

as the owner of land within five miles of the point designated as a crossing, outside of an inclosure, has some right superior to that of one who seeks a crossing within his own inclosure.

If any two citizens "who either live or own lands within five miles of the place" where a crossing may be demanded, may require a crossing outside of an inclosure, then we apprehend that the mere fact that appellee owns the land and has granted the right of way would not debar either of the right to make the demand. The statute seems to have two objects, one to benefit the owner of inclosed land, and the other to promote convenience of the public in passing from one part of a neighborhood to another over uninclosed land where there are no public roads. The public can have no interest in a crossing within the inclosure of a private individual. The right of a railroad company to the unobstructed use of its way is property, and not a mere franchise. (Johnson v. Railway Co., 116 Ill., 521.) Admitting, then, that the object of the statute in providing for crossings outside of inclosures is to subserve a public use, the question arises: Can the way of a railroad be appropriated in the manner provided in the statute, and without compensation to the company? The Constitution leaves the manner in which highways may be established, and public property taken for that purpose, to the wisdom of the Legislature, subject, however, as we think, to certain fundamental principles.

Our Legislature has delegated the authority to open public roads to the body known to the Constitution as the commissioners court. It may be that it had power to confer this authority upon some other board of officers to be duly elected or appointed and qualified. But that it can not authorize any two or more of the citizens of the State arbitrarily to exercise this power is too clear for argument. In Rhine v. City of McKinney, 53 Texas, 354, it is held that so much of the act of March 15, 1875, for the incorporation of cities or towns, as authorized the city council to appoint three disinterested free holders to assess the value of property sought to be condemned, is unconstitutional. The decision is placed upon the ground that the city council was one of the parties to the proceeding, and that it was not due course of law to permit it to select all the assessors who were to place a valuation upon the property. If the interest of the council is to be identified with that of the city, and it is to be held as not standing impartial between the

municipality and the citizen, this is very sound law. The effect of the provision in question in this case is to enable any two citizens owning land or residing within five miles of a point on a railroad, within a mile and a half of which there is no crossing—though actuated solely by selfish or malicious motives—to require the company to establish a public way across its track—notwithstanding such way has no connection with any other way over which the public has the right to pass. As a result of such an exercise of power, it might occur that after the company had made the crossing and incurred the consequent expense of adjusting their fence and erecting cattle guards, the owner of the land upon either side would fence his premises and thereby render the opening across the track useless for any purpose. This can hardly be deemed an extreme case or an improbable occurrence, and seems to illustrate the arbitrary character of the provision of the statute now under consideration. The statutes have conferred upon the commissioners courts the power to establish public roads of the first, second and third classes, to be maintained by the public (Rev. Stats., arts 4361 to 4364); and also neighborhood roads, which are not required to be worked by the road hands (Rev. Stats., arts. 4377 to 4386); and these would seem sufficient to meet all necessary wants of the public. If not, additional authority could proporly be conferred upon that court.

For the reasons stated, we are of opinion that this provision can not be sustained upon the ground that it is for the benefit of the public; and it is not necessary for us to decide whether the Legislature can authorize the establishment of a highway across a railroad track, without making compensation for the burden thereby imposed. Upon this question there is a conflict of decision. In Massachusetts it is held that this can not be done (Old Colony Railroad v. Plymouth Co., 80 Mass., 155), but a contrary doctrine is held in New York. (Boston Railroad v. Greenbush, 52 N. Y., 510; Albany Railroad v. Brunell, 24 N. Y., 345.) The presumption that in granting a charter to a railroad company the Legislature reserves a right to lay out public roads across its track without compensation, is much stronger in case of a sparsely settled State, than in one which is already densely populated, and it may be that for this reason our courts should follow the rule of the New York decisions.

Nor do we think the provision in question can be sustained as an exercise of the police power. The opening of crossings

over a railroad track, such as provided for in this statute, is not calculated to promote the safety of persons or property, but rather to increase the danger. So far as the owner whose land is intersected by the railroad is concerned, the want of a crossing doubtless injuriously affects the use of his property; and we have held that he is entitled to his reasonably necessary crossings, but that the company can not be compelled to bear the burden of putting them in after he has been compensated for this expense.

As we have said in the Rowland case we say in this, that as to rights of way acquired since the act in question went into effect, the statute may be enforced as between the land owner and the railroad companies.

For the reasons stated the judgment will be reversed and here rendered for appellant.

*Reversed and rendered.*