**WORD v. KUYKENDALL.**　(No. 6840.)

(Court of Civil Appeals of Texas. San Antonio. Dec. 6, 1922. Rehearing Denied Jan. 10, 1923.)

**1. Deeds ⬚142—Grantor of land may reserve possession until happening of contingency.**

A grant retaining possession of land until a certain contingency happens is not inconsist-

ent; the grantor having the right to divide the fee into distinct estates of which he may convey one or more and retain others, providing such estates do not contradict or are not repugnant to the grant in the deed.

**2. Deeds ⬚143—Reservation of right to "use and occupy" is assignable.**

The reservation of the right to "use and occupy" for a certain period of time does not mean a mere personal occupancy, but a general right of the grantor to occupy by himself or others.

**3. Deeds ⬚142—Clause in deeds of pasture land, reserving to grantor and heirs possession of tracts until same are inclosed with fences, held valid.**

A clause in a deed of pasture lands, providing that the possession and use of the tracts would remain in the grantor until the tracts were inclosed with a fence by the purchaser or his heirs or their assignees, held a valid reservation.

Appeal from District Court, La Salle County; C. C. Thomas, Judge.

Action by I. W. Word against Ira Kuykendall. Judgment for plaintiff in part only, and he appeals. Reversed and remanded.

Hicks, Hicks, Dickson & Bobbitt, of San Antonio, for appellant.

John W. Willson, of Cotulla, and Garnand & Hardy, of Jourdanton, for appellee.

COBBS, J. Appellant brought this suit against appellee to recover $2,500 damages or in the alternative for $1,000 as pasturage and $5,000 exemplary damages alleged to have been suffered by appellant by reason of the wrongful act or trespass of appellee in unlawfully turning his cattle in the Naylor and Jones pasture situated in La Salle and McMullen counties, leased and occupied by appellant. Appellant also prayed for possession of the pasture and for a permanent injunction, prohibiting appellee from running cattle in appellant's said pasture.

Appellant alleged that he was the lessee of the Naylor and Jones estates and of the Fowler Bros. Land Company, of a pasture known as the Naylor and Jones pasture consisting of about 65,000 acres of land in La Salle and McMullen counties, Tex. He further alleged that this land had been subdivided into small tracts, and that about 33,-000 acres of it had been sold in accordance with a plan of subdivision and sale which had been agreed on between the Naylor and Jones estates and Fowler Bros. Land Company. It was further alleged that 3,000 acres had been sold outright to the Fowler Bros. Land Company, and that, in all deeds made to purchasers of the subdivisions sold either by the Naylor and Jones estate or Fowler Bros. Land Company, it was provided that the possession and use of the tracts sold would remain in the ven-

dors until the same were fenced with a good and sufficient fence by the purchaser or his heirs or assigns. It was further alleged that something over 30,000 acres of the land was sold, and of this amount about 16,000 acres had been fenced by the purchasers and 14,000 acres had remained unfenced. Plaintiff further alleged that he was the lessee under the Naylor and Jones estates and Fowler Bros. Company, of all unsold land in the Naylor and Jones pastures, and all land therein that had been sold, but that had not been fenced. A map of the subdivision of the pasture was referred to, showing a county road running through the same, and also showing a dedication of roads along the lines of the different sections of land. This map also showed two town sites located within the pasture, to wit, the town of Fowlerton and the settlement of Dull. Plaintiff further alleged that defendant had wrongfully driven and pastured about 400 head of cattle on said land.

The defendant claimed to have leases on several hundred acres of the unfenced land which had been sold by the Naylor and Jones estates, and claimed that the reservation in the deeds above referred to were invalid, and that therefore appellant had no right to the use and possession thereof, but the same belonged to appellee under his leases from the respective owners. Appellee also claimed the right to run cattle on the unfenced townsite of Fowlertori as a citizen of that town.

The court held that the reservation was invalid, and that appellee had the right to the exclusive use and possession of the unfenced lands held by him under lease. The court, however, found that appellee had an excess number of cattle in the pasture, and rendered judgment against him in favor of appellant for the pasturage on the same, but denied appellant's recovery of damages because of injury suffered by appellant's cattle as a result of the overstocking of the pasture by appellee.

The facts found by the court were to the effect: That the pasture lands owned in 1910 by Naylor and Jones and inclosed by substantial fences amounted to 65,000 acres used by the owners for the pasturage of cattle. That Naylor died in 1910, and Jones in 1913. R. L. Ball was appointed under Naylor's will his sole independent executor, and Mrs. Sue Willis Jones, Noa Spears, and R. L. Ball appointed the independent executors of the Jones' estate. That said lands were mapped and platted and sold in 10-acre tracts, except a deed for approximately 3,000 acres sold to Fowler Bros. Land Company in 1912, which contained the following clause:

"It being further provided and conditioned that the grantors reserve and retain the right to the use and possession of said acreage property for pasturage purposes until the said grantee, his heirs or assigns, shall inclose the same by a good and substantial fence."

The contracts for the sale of the lands did not contain this reservation, but the deeds in pursuance therewith did. All the deeds of the 3,000 acres to Fowler Bros., made by them to purchasers, contain the reservation.

Fowler Bros. Land Company conducted a sales agency, and platted the land and divided each section into 10-acre tracts, designating roads through and around them, and laid out and platted the town of Fowlerton, consisting of about 1,200 acres in a solid body not fenced off separately, and the lots were sold in the townsite of Fowlerton, and the deeds did not contain the said reservation which applied to the acreage property.

On the day of the trial approximately 33,000 acres of the farm tracts in said pasture had been sold, and approximately 32,000 acres thereof remained unsold. Of the acreage sold, approximately 13,000 acres are now fenced by purchasers. Approximately 20,000 acres of the acreage tracts sold have not been fenced by the purchasers, and that approximately 3,000 acres of the acreage tracts that have been sold have been fenced by the purchasers, but the fences are now down.

The case was tried without a jury, and judgment was rendered that appellee had 171 head of cattle on the pasture in excess of what he was entitled to run therein, and that appellant was entitled to recover of appellee the sum of $256.50, with interest from date of judgment value of pasturage between January 15, 1922, to date of trial, and also to a judgment against appellee for $235.12 pasturage from date of trial to May 10, 1922, after which date appellee was enjoined from maintaining said excess of cattle on said pasture.

Appellant's first proposition is:

"The vendor of real property has the right to make in his deed any reservation as to possession of the property for a definite or indefinite length of time that does not substantially contradict the grant; and where a large tract of land has been subdivided and is being sold off in small tracts, a reservation by the vendor that the latter 'reserves and retains' the right to the use and possession of the tract so sold until the grantee, his heirs or assigns, shall enclose the same by a good and substantial fence, is a valid reservation, and will be enforced against such vendees, and parties claiming under them so long as such tracts are unfenced and said original tract unsold."

[1] There is nothing unusual or inconsistent in a grant that retains possession of land until the happening of a certain contingency. He may divide the fee into distinct estates if he sees fit to do so. He may convey one or more of his estates and retain one or more in himself, provided they do not contradict or are not repugnant to the grant in the deed.

In the grant under consideration there were no words of inheritance, and none were necessary, for it is apparent that the reservation was for the benefit of the land re-

tained by the grantor, in which there was a reservation or easement of like duration with his estate in such land. For instance, here is an enormous body of pastural land being cut up in 10-acre tracts for the purpose of colonization. As long as the lands were unfenced and unoccupied, they were only valuable for pasturing purposes. But when fenced and occupied and settled upon by the purchasers, the land values would be increased correspondingly. It has been frequently held that improvements on property, requiring that a certain class of buildings only shall be placed thereon, are valid. It is too often held that clauses in deeds, reserving mineral and other rights, are valid. The right of the lessor to hold possession of the estate during development cannot be gainsaid. The right to hold possession of land until a certain event, such as improving or fencing, is not repugnant to the grant.

[2] The right to "use and occupy" for a certain period of time, such as here provided for, does not mean a mere personal occupancy, but a general right of the grantor to occupy by himself or others. Cooney v. Hayes, 40 Vt. 478, 94 Am. Dec. 425.

A grantor may reserve the possession of land to himself for a determinate or indefinite period. It may be limited to specific purpose, to a certain locality, or the right to possession may be a fluctuating one. The right to occupy is also equivalent to the right to possess, and carries with it such implied incidents as are necessary to the proper and lawful exercise of the rights reserved, or which are within the purpose and intent of the reservation. 18 C. J. § 365j, and notes.

The true rule is said to be that, where words taken according to their technical meaning do not create a legal reservation, and are notwithstanding construed to amount to a reservation, it is always done with a view to advance the intent of the parties, but not to destroy it. When the reservation is not repugnant to the grant, a reservation or exception may appear in any part of the deed. 18 C. J. § 340. While at one time it may have been held words of inheritance in a grant were necessary to pass the reservation to an assignee, it was never necessary to retain the right in the grantor and his heirs. Worscester v. Smith, 117 Me. 68, 103 Atl. 65; McCoy v. Chicago, M. & St. P. Ry. Co., 176 Iowa, 139, 155 N. W. 995; Negaunee Iron Co. v. Iron Cliffs Co., 134 Mich. 264, 96 N. W. 468; Mandle v. Ghering, 256 Pa. 121, 100 Atl. 535. A reservation in a grant in respect to some future use of the land is valid as an easement or the like. Green Bay & M. Canal Co. v. Hewitt, 66 Wis. 461, 29 N. W. 237; Cutler v. Tufts, 20 Mass. (3 Pick.) 272–278; Winthrop v. Fairbanks, 41 Me. 307–311; McCoy v. Chicago, M. & St. P. Ry. Co., supra. This last case quotes the language of the Minnesota court to the effect:

"The day is past for adhering to the technical or literal meaning of particular words in a deed or other contract against the plain intention of the parties as gathered from the entire instrument."

[3] We fail to follow the reasoning of the learned trial judge. The clause in the contract is in no respect contrary to public policy. There is no public policy involved that would deny to a vendor in selling small tracts of land, cut out of a larger portion, to very small acreage tracts requiring certain improvements to be made—in so many words, improvements of fencing the \land off or otherwise. This was accomplished by retaining the possession and use for grazing until fenced. Such possession and use was not in any sense an unreasonable limitation upon the title of the purchaser interfering with his uninclosed land, where the cattle of others within the general inclosure could trespass at will. We cannot perceive how it was in the least a burden upon the title or in the least hurtful. So long as the fence was not erected, the seller's stock, or any other person's stock, could pass upon the lands, wander over them, and feed upon the grass at will.

It is perfectly legal for parties to contract and place in their deeds certain reservations or exceptions for the use and possession of the conveyed premises as a part of the consideration thereof to be enjoyed by the grantor, his heirs and assigns, for a stated period of time. This is done constantly, and the books are full of such illustrations, supporting them. Of course, reservations or exceptions that contradict the grant, and are so repugnant as not to be able to determine whether any title passed at all, would be void and nonenforceable.

The case of Puckett v. McDaniel et al., 96 Tex. 94, 70 S. W. 739, cited by appellee, is not in point at all. The case of Richter v. Granite Mfg. Co., 107 Tex. 58, 174 S. W. 284, L. R. A. 1918A, 504, is not in point for appellee, but is to the contrary, if anything. In this case the deed granted all the riparian rights of the grantor, then undertook to reserve an equal undivided one-half interest in the water power included within the land described and necessary ground to utilize the same, and was held to be void, because so vague as to the amount of land reserved that its exercise would be inconsistent with the grant.

The case of Arden v. Boone (Tex. Civ. App.) 187 S. W. 995, cited by appellee, is not in point. It grows out of the construction of a deed in which it was contended the deed did not express the terms of the contract with reference to a road passway, and the jury found that, at the execution of the contract of sale and at the time of the execution of the deed, a passway with gates should be reserved, and the court entered a

judgment thereon for the defendants, and the judgment was affirmed.

The case cited by appellee of Jung v. Petermann (Tex. Civ. App.) 194 S. W. 203, is not in point for appellee's contention. It simply holds, among other things, in deeds with full covenants of warranty, exceptions, conditions, or reservations inconsistent with the grant, which destroy, or have a tendency to destroy, the grant, are of no effect.

There are other cases cited by appellee less in point than these. We fail to see any similarity between the cases cited by appellee on his contention that the clause in question in the lease impairs, contradicts or destroys the grant.

The clause under consideration, giving it the most technical construction contended for, does not deserve the trial court's condemnation that it "is contrary to public policy and is an unreasonable limitation upon the title." It is a valid reservation. McCoy v. Chicago, M. & St. P. Ry. Co., 176 Iowa, 139, 155 N. W. 995; Corpus Juris, vol. 18, 351; Cooney v. Hayes, 40 Vt. 478, 94 Am. Dec. 425; Jackson v. Snodgrass, 140 Ala. 365, 37 South. 246.

Doubtless it was understood by the purchasers that the reservation was for the benefit of the unsold land, which, of course, to that extent constituted an interest in the sold land which would continue until the owners would sell the land for the protection of which it was made. They do not seem to complain.

As this case will have to be reversed and remanded for another trial, we do not think the other questions presenting erroneous rulings by the court are necessary to pass directly upon, because they were predicated upon the proposition that the clause in the lease was invalid.

For the reasons given, the judgment of the trial court is reversed and remanded for another trial.