TOMMIE MITCHELL ET AL V. MILDRED CASTELLAW ET VIR.

No. A-3371. Decided January 30, 1952.
Rehearing overruled March 5, 1952.
(246 S. W., 2d Series, 163.)

*Florence and Florence,* of Gilmer and *D. S. Meredith, Jr.,* of Longview, for petitioners.

The Court of Civil Appeals erred in holding that the title to the 2½ x 16 foot strip of land passed to the appellees and their predecessors in title because one cannot legally acquire title to land except by an instrument in writing or by limitation, and the instrument in the present case was a general warranty deed and there was no plea of limitation asserted. Howell v. Estes, 71 Texas 690; West v. Probst, 6 S. W. 2d 96; Miles v. Bodenheim, 193 S. W. 693.

*Fulton & Hancock, Hollie G. McClain and Edwin M. Fulton,* all of Gilmer, for respondents.

MR. JUSTICE GARWOOD delivered the opinion of the Court.

The defendants, Mitchell and Powers, petition for relief from the judgment of both courts below, establishing easements in favor of the plaintiff-respondents, Castellaw et vir., as owners of a corner filling station lot, over two small strips upon the two adjoining lots of the petitioners, all in Block 42 of the City of Gilmer. The trial was by the court, and no fact findings appear in the record. For further details of the proceedings below, see the opinion of the Court of Civil Appeals, 241 S.W. 2d 946.

The location of the strips and lots in question is, for our purposes, sufficiently indicated by the following sketch (with arbitrary lot numbers) :

Legend:
1—Mitchell and Powers North Lot
2—Mitchell and Powers West Lot
3—Filling Station Lot
x—9' x 23' Driveway strip
y—2 1/2' x 16 1/2' Wash Rack strip

As indicated, the alleged servitudes are (x) a driveway connecting the filling station (lot 3) with Tyler Street via lot 2 and (y) the northerly two and a half feet of a wash shed or rack of the station which projects from its main location on lot 3 onto lot 1 to that extent. As decreed by the courts below, the driveway is to be without limit in point of time, but the other is to expire on removal of the projecting part of the wash shed for any cause. The easements derive respectively from two 1938 conveyances of a Mrs. Sallie Stapp, who then owned all three lots, the driveway being said to arise by way of express reservation in her deed of lot 2 to Malcolm Smith and wife, while the temporary wash shed easement is implied from circumstanes incident to her deed of lot 1 to her daughter, Mrs. Isabelle Anderson.

Throughout 1938 and for many years previously and subsequently, lot 3 was leased out by Mrs. Stapp and has been continuously used as a filling station under those leases, the last of which was apparently still in effect when she died sometime between 1945 and 1948. Respondent, Mrs. Castellaw, who is

another daughter of Mrs. Stapp, succeeded to ownership of the filling station as her devisee and, in effect, renewed the last lease made by Mrs. Stapp, so that the term will expire in late 1953.

As to the driveway easement, Mrs. Stapp's conveyance of lot 2 to Smith and wife was by general warranty deed, which is copied in full in the footnote. ([1]) Obviously, the only words suggestive of a reservation are those following the metes and bounds description of the full lot and reading as follows:

---

(1)
" 'That I, Mrs. Sallie Stapp, a widow, of the County of Upshur, State of Texas, for and in consideration of the sum of One Thousand and no/100 Dollars to me in hand paid by Malcolm Smith and wife Blynn Smith as follows: Cash in hand the receipt of which is hereby acknowledged and confessed, have granted, sold and conveyed, and by these presents do grant, sell and convey, unto the said Malcolm Smith and wife, Blynn Smith, of the county of Upshur, State of Texas,

" 'All that certain portion of Block 42 of the City of Gilmer, Texas, as shown by the plan and plat of said city which is located in Upshur County, Texas, as described below:

" 'Beginning 67 feet 4½ in. W of S.E. corner of Block 42 on Tyler Street, same being the S.E. Corner of Judie Barnwell's lot;

Thence N 59 feet;

Thence E 29 feet;

Thence S 59 feet;

Thence West 29 feet to place of beginning.

" 'It is expressly agreed and understood that grantors, their heirs or assigns, shall not build or permit any one else to construct any type of building or anything else on the portion of lot described as follows; and that grantor shall have the right to use this part of said lot as a driveway:

" 'Beginning at the S.E. corner of above described lot;

Thence west 9 feet;

Thence North 23 feet;

Thence east 9 feet;

Thence South 23 feet to place of beginning.

" 'To have and to hold the above described premises, together with all and singular the rights and appurtenances thereto in anywise belonging unto the said Malcolm Smith and wife, Blynn Smith, their heirs and assigns forever and I do hereby bind myself and my heirs, executors and administrators, to warrant and forever defend, all and singular the said premises unto the said Malcolm Smith and wife, Blynn Smith, their heirs and assigns, against every person whomsoever lawfully claiming, or to claim the same, or any part thereof.

" 'Witness my hand at_____this 28th day of March, 1938.

" '(S) Mrs. Sallie Stapp.' "

" 'It is expressly agreed and understood that grantors, their heirs or assigns, shall not build or permit any one else to construct any type of building or anything else on the portion of lot described as follows; and that grantor shall have the right to use this part of said lot as a driveway.' " (followed by metes and bounds description of the driveway strip).

Clearly, if this single provision, which itself contains no words of inheritance or other words of art, were lifted out of the instrument, the latter would be a grant of complete and exclusive dominion over the lot. The word "grantors" in the very first part of the provision obviously was intended to mean "grantees." The grantees, Smith and wife, conveyed the lot to petitioners Mitchell and Powers in 1947 (some ten years later) and in their deed changed "grantors" to read "grantees," but otherwise used the exact "reservation" clause of the Stapp deed.

The view of petitioners is that the provision in question either amounted to nothing more than a so-called easement "in gross," that is, a merely personal right of Mrs. Stapp, which did not pass by her devise of the filling station lot to respondent, Mrs. Castellaw, or that the provision is repugnant to the grant of the whole lot and should therefore be treated as if never written. Further consideration of the matter confirms our original conclusion that the courts below properly rejected these contentions.

1 That an easement of this kind may be validly reserved in a deed of the fee simple title is beyond question. Stuart v. Larabee, Tex. Civ. App., 14 S.W. 2d 316, er. ref.; Hansen v. Bacher, Tex. Com. App., 299 S.W 225; Word v. Kuykendall, Tex. Civ. App., 246 S.W. 757. And petitioners apparently concede—as they should—that the easement here would so have arisen if only the deed had been somewhat more artfully drawn as to (1) an intent that the "reservation" clause and the other provisions of the instrument should be read together and (2) the relationship of the "reserved" rights with the filling station lot as an appurtenance of the latter, rather than as rights purely personal to Mrs. Stapp.

So far as the point of repugnance goes, if the granting, habendum or warranty clause had contained the mere phrase "subject to the reservation elsewhere made herein," or if the reservation clause had but included the words "notwithstanding any other provision of this instrument," there would be little doubt

from the whole instrument that a reservation was intended. The situation is clearly different from one in which, for example, the usage were for very general purposes, or for a specific purpose but purportedly applicable to every part of the lot conveyed. In Hansen v. Bacher, supra, which upheld a reservation for temporary occupancy by the grantor in an otherwise fee simple, general warranty deed, and is quoted from at length in the opinion below, Judge Powell aptly points out that in a sense every reservation conflicts with the grant, and the real question is whether there is such a clear conflict that the grantor could not reasonably have intended both provisions to stand as written. See also Word v. Kuykendall, supra; Cravens v. White, 73 Texas 577,579, 11 S.W. 543,544, 14 Tex. Jur., "Deeds" §§ 179-180. Here, it is quite unlikely that the ordinary reader of the whole instrument would be puzzled about what the grantor meant to alienate and what she intended to keep, and we see no good reason to require in addition that she expressly disclaim the possibility of a conflict.

Certainly none of the decisions cited for petitioners suggest a contrary conclusion. Koenigheim v. Miles, 67 Texas 113, 2 S.W. 81, 84, involved a supposed repugnance in a deed purporting to convey the interest of the grantor "in and to the said survey of lands aforesaid, except, however, so much thereof as is mentioned and described in the last deed of conveyance, aforesaid * * *." We held no conflict to exist. In Hamilton v. Jones, 32 Texas Civ. App. 598, 75 S.W. 554, er. ref., the reservation provided for full control of and right to sell the entire premises during the life of the grantors, and this was held repugnant to the otherwise fee simple grant by warranty deed. Jung v. Petermann, Tex. Civ. App., 194 S.W. 202, 204, er. ref., held the reservation clause itself to be meaningless, since it purported to reserve the full homestead rights of the grantor in the entire premises conveyed, while, in the same sentence, "agreeing that my said grantee * * * shall not be disturbed in the actual possession, cultivation and enjoyment of the premises * * *."

As suggested in Hansen v. Bacher, supra, where both the grant and the reservation are general, or both are specific, a true repugnance is far more probable than where the grant is general and the reservation specific. In the two former situations, the intent of the grantor may well be, as a practical matter, a hopeless enquiry. In the latter, there is ordinarily a common sense inference that the grant is meant to be qualified by

the specific reservation, and accordingly to that extent both should be allowed to stand. See also Word v. Kuykendall, supra, 14 Tex. Jur., supra. In the present case the specific character of the reservation relative to the grant is evident from the limited physical area affected, the exact description thereof, its location at the very edge of the lot, the limited number of rights reserved and no doubt also the fact that such rights were consistent with a substantial usage of the same area by the grantee.

2  We consider equally unfounded the contention of an easement in gross or—what in result here would be the same thing —the inadequacy of the reservation for lack of words such as "reserve" or "and her heirs." In Stuart v. Larrabee, supra, A reserved in her deed to B a right of way for C and D "as owners of" certain tracts adjoining the land conveyed. In holding the easement to be appurtenant to the mentioned tracts, the court considered "not only the terms of the grant itself, but the nature of the right and the surrounding circumstances." 14 S.W. 2d 316,320. (That decision, due to confusion of the trial court's extended conclusions of law with the actual opinion of the Court of Civil Appeals, in which the former are quoted, is erroneously cited by various publications for the proposition that an easement is presumptively appurtenant rather than in gross, but the proposition does, nevertheless have authority to support it. Alley v. Carleton, 29 Texas 74,78; International & G.N.R.R. Co. v. Bost, 2 Willson, Civ. Cas. Ct. App. § 383. See also 28 C.J.S. Easements, § 4, p. 637). "Such circumstances are always relevant in construing language alleged to create an easement." Restatement, Property, § 474, comment c. See also 28 C.J.S., supra, pp. 636,637. Beyond question such a test on the record before us results in an appurtenance. Even were there a doubt, which apparently there is not, that Malcolm Smith himself (as sublessee of Magnolia Petroleum Company) was and had long been using the driveway on lot 2 for access to lot 3, when Mrs. Stapp conveyed the former to him, it is yet plain that an easement of such purpose, location, area and shape could be useful only with reference to lot 3, which Mrs. Stapp then owned. Under such circumstances the easement will be considered an appurtenance to lot 3. It would seem to be the better rule that neither words of inheritance nor other words of art are essential to the valid reservation of an appurtenant easement of even unlimited duration. Restatement, supra, § 468, comment b and § 473, comment a; 28 C.J.S., supra. See also Word v. Kuykendall, supra. We are cited no Texas authority to the contrary. Clearly such is the case with reference to an exception

clause operating to sever the minerals from the surface. Associated Oil Co. v. Hart, Tex. Com. App., 277 S.W. 1043.

A much closer question is that of respondents' implied easement on lot 1 for accommodation of part of the wash shed. As stated, Mrs. Stapp in 1938, while owning lots 1 and 3, conveyed lot 1 to her daughter, Isabelle Anderson, from whom the title (to the southerly half) duly passed to petitioners, Mitchell and Powers after sundry mesne conveyances. (An earlier claim of respondents Castellaw that a deed out of Mrs. Anderson expressly provided for the easement has been abandoned). The conveyance to Mrs. Anderson was an unrestricted general warranty deed, reciting a consideration of $10 cash "and the further consideration of love and affection." It contained nothing whatever to suggest a reservation. At the time of this conveyance the wash shed extended onto lot 1 just as it does today, having been built thus "in the early thirties" by Malcolm Smith, who was then operating the filling station on lot 3 as before mentioned. The wash shed is evidently a substantial structure with concrete flooring and has been at all times, no doubt, plainly visible, though there does not appear otherwise to have been anything on the ground to indicate its encroachment onto lot 1. Mrs. Stapp evidently knew about the erection of the shed, but there is nothing to indicate that, when she conveyed to Mrs. Anderson, either of them realized that the encroachment existed. The width and length of lot 1 (stated in the deed) are respectively about twenty times and four times the corresponding dimensions of the encroachment. The existence of the latter would in no way be suggested by the deed, without a physical application of the description to the ground. Despite its small extent, the encroachment undoubtedly served a purpose quite useful to the enjoyment of the filling station lot. But whether it was at all necessary to such enjoyment in the sense that the station could not have been properly conducted without it or that a readjustment of the shed so as to eliminate the encroachment would have been impracticable for any reason, is not touched on in the evidence.

**3** It is universally recognized that where the owner of a single area of land conveys away part of it, the circumstances attending the conveyance may themselves, without aid of language in the deed, and indeed sometimes in spite of such language, cause an easement to arise as between the two parcels thus created —not only in favor of the parcel granted ("implied grant") but also in favor of the one remaining in the ownership of the

grantor ("implied reservation"). The basis of the doctrine is that the law reads into the instrument that which the circumstances show both grantor and grantee must have intended, had they given the obvious facts of the transaction proper consideration. And in the case of an implied reservation it is not necessarily a bar to its creation that the grantor's deed, into which the law reads it, actually warrants the servient tract thereby conveyed to be free of incumbrance. Restatement, Property, §§ 474-6; 28 C.J.S., Easements, §§ 30,34; 17 Am. Jur., Easements, §§ 32,45; Othen v. Rosier, 148 Texas 485, 226 S.W. 2d 622; Bains v. Parker, 143 Texas 57, 182 S.W. 2d 397; State v. Black Bros., 116 Texas 615, 297 S.W. 213, 53 A.L.R. 1181; Sellers v. Texas Central Ry. Co., 81 Texas 458, 17 S.W. 32, 13 L.R.A. 657; Howell v. Estes, 71 Texas 690, 12 S.W. 62; Gulf C. & S.F. Ry. Co. v. Rowland, 70 Texas 298, 7 S.W. 718; Gulf C. & S.F. Ry. Co. v. Ellis, 70 Texas 307, 7 S.W. 722; Alley v. Carleton, 29 Texas 74; Holman v. Patterson, 34 Tex. Civ. App. 344, 78 S.W. 989, er. dism.

4 On the other hand, even in the case of an implied grant, courts do not lightly hold the grantor to convey more than stated in his deed; and he being less favored in law than his grantee, the weight of authority seems still more reluctant to imply a reservation in his favor at the expense of his grantee. Restatement, supra, § 476, comments c and g; 28 C.J.S., supra, § 34; 17 Am. Jur., supra, § 45; Othen v. Rosier, State v. Black Bros., Sellers v. Texas Central Ry. Co., and other decisions, supra. Thus although various types of factual consideration may operate in a particular case to defeat the implication of intent to reserve the easement, (e.g. the nonapparent character of the flood usage considered in Sellers v. Texas Central Ry. Co., supra) and while decisions of the different states are not uniform on the point, we ourselves have stated in broad terms as recently as Othen v. Rosier, supra, (148 Tex. 485, 226 S.W. 2d 626), (a "way of necessity" case) that no reservation of an easement will be implied where the claimed right of usage is not shown to be strictly necessary in order that the grantor of the alleged servient tract may enjoy his ownership of the parcel which he retained in his erstwhile single tract after making the conveyance. See also our other and somewhat earlier decision on an alleged "way of necessity" in Bains v.Parker, supra.(143 Tex. 57, 182 S.W. 2d 399). It may be that the language in these two last mentioned cases and earlier ones of our state was intended to refer only to situations in which the reservation is claimed to exist by reason of sheer necessity rather than, as in the instant

case, by reason of an open and perhaps reasonably necessary usage of the alleged servient tract existing at the time the reservation is said to have arisen. However, the rule of strict necessity has been applied in decisions of other states, such as Bubser v. Ranguette, 269 Mich. 388, 257 N. W. 845, so as to reject the reservation under facts quite similar to those now before us. As stated, the authorities are not uniform. For example, the Supreme Court of Illinois seems to have held just contrary to Bubser v. Ranguette. Bihss v. Sabolis, 322 Ill. 350, 153 N. E. 684, 53 A.L.R. 907. As indicated in the opinion below, even some of our own courts have expressly applied a rule of "reasonable," as distinguished from "strict," necessity. Scarborough v. Anderson Bros. Const. Co., Tex. Civ. App., 90 S. W. 2d. 305, er. dism.; M-K-T Co. of Texas v. Cunningham, Tex.Civ.App., 273 S.W. 697. Neither of these decisions has been expressly overruled. The result in another Texas decision cited in the opinion below seems also in conflict with the rule of strict necessity upon a set of facts rather analogous to those of the instant case. El Paso Land Improvement Co. v. Crawford, Tex. Com. App., 292 S. W. 518. There is even some apparent conflict between the expression "reasonably necesary" as used in Gulf C. & S.F. Ry. Co. v. Rowland and Gulf C. & S.F. Ry. Co. v. Ellis and the rule of strict necessity stated in Othen v. Rosier and Bains v. Parker, all supra. The American Law Institute takes the view that, while reservations of easements should indeed be less readily implied than grants thereof, the circumstance of necessity is only one of many to be considered and that a reservation may accordingly be implied in a given case even though the degree of necessity be less than "strict." Restatement, supra, § 476 and comments. The Institute formula, in its approach to the fundamental matter of intent of the parties, is perhaps more scientific than a doctrine, which includes the "strict necessity" requirement. But the latter, too, has its good points. It is undoubtedly simpler of application. Moreover, as occasionally stated in the books, the whole theory of implied easements is somewhat in derogation of the registration statutes and indeed the statute of Frauds, while even the term "strict necessity" is not hopelessly inelastic for sensible application to varying sets of facts. On the whole, we believe the requirement of strict necessity as prerequisite to all implied reservations of easements is more in accord with our local practices and traditions than a contrary view would be.

5  The question of strict necessity *vel non* is one of mixed law and fact and accordingly one for the fact finder in the ordinary

case. In the instant case, as before stated, we find no evidence in the record on which an implied or express finding of such necessity might rest. For aught that appears, the wash shed could be easily altered so as to rest entirely on lot 3 and be there used without grave difficulty in the other operations of the station. The burden of proof was on the respondent, Castellaw, who asserts the implied easement. Baines v. Parker, supra. Since respondents failed to discharge that burden, the judgments of both courts below must be reversed on this phase of the case. Ordinarily we would also render judgment thereon for the petitioners. However, the case seems not to have been tried with the issue of strict necessity in mind. Upon another trial it seems probable that evidence on that question would be forthcoming. We believe that justice would be better served by not rendering judgment for the petitioners at this time.

6  Since this issue as to the wash shed is severable from that regarding the driveway, we may properly affirm the judgments of both courts as to the latter, while reversing the judgments and remanding the cause for a new trial as to the former.

It is so ordered. The costs in this court are taxed equally to both parties. Costs in the Court of Civil Appeals are taxed against the petitioners, Mitchell and Powers.

Opinion delivered January 30, 1952.

Rehearing overruled March 5, 1952.