# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00610-CV

**Infiniti Hotel Group, LLC, Appellant**

**v.**

**Vinay Patel and Sai Laxmi, LLC, Appellees**

## FROM THE DISTRICT COURT OF COMAL COUNTY, 207TH JUDICIAL DISTRICT
## NO. C2009-0138B, HONORABLE DIB WALDRIP, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This appeal arises from a dispute between adjoining property owners regarding an easement. Appellant Infiniti Hotel Group, LLC filed suit against appellees Vinay Patel and Sai Laxmi, LLC (collectively "Sai Laxmi") seeking to enjoin Sai Laxmi from constructing a hotel and parking lot that would require access over Infiniti's lot. Sai Laxmi counterclaimed for declaratory judgment regarding a claimed easement. Infiniti appeals from a summary judgment in favor of Sai Laxmi on their counterclaims, asserting that the trial court erred by (1) failing to hold a separate evidentiary hearing on the admissibility of Infiniti's expert affidavit, (2) sustaining Sai Laxmi's objections to Infiniti's expert affidavit, (3) granting Sai Laxmi's summary judgment motion, and (4) denying Infiniti's motion to enforce a rule 11 agreement. We will affirm the judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

The parties own a total of three lots located on the frontage road of IH-35 in New Braunfels, Texas. Sai Laxmi owns two lots along the frontage road and Infiniti owns a T-shaped lot located behind Sai Laxmi's lots. The "stem" of Infiniti's "T" ends at the frontage road and connects the main portion of Infiniti's otherwise landlocked property to the IH-35 frontage. Sai Laxmi's lots are located on either side of Infiniti's lot. The following is a simplified drawing of the lots.



The light gray area of this drawing, which is the "stem" of Infiniti's lot, is a private road connecting the IH-35 frontage to Infiniti's main lot. It provides the only access from the IH-35 frontage to the three lots because the Texas Department of Transportation ("TxDOT") has designated the areas where lots 1D-3 and 1D-4 adjoin the IH-35 frontage as "no access" areas. Lot 1D-1, which is not part of this suit, has separate access to another road.

Sai Laxmi wanted to construct a multistory hotel on lot 1D-3 and use the smaller lot 1D-4 as a parking lot. Because New Braunfels' zoning ordinances require that parking spaces be

2

located on the same lot as the structures they serve, Sai Laxmi sought a variance from the city to allow construction of parking spaces on the second lot across the "shared access roadway"—i.e., Infiniti's private road—from the hotel lot. Infiniti objected to the request on various grounds, but, after a public hearing, the city's zoning board approved Sai Laxmi's variance.

Infiniti filed this suit in district court against the zoning board and Sai Laxmi, seeking review of the zoning board's decision and an injunction to prevent Sai Laxmi from beginning construction on its hotel and parking lot. Infiniti asserted that the zoning board's variance created a public safety hazard and increased Infiniti's liability exposure. Infiniti also argued that the board's decision "erroneously assume[d] that Sai Laxmi had an easement across Infiniti's private road." In response, Sai Laxmi filed a counterclaim, seeking declaratory judgment that its two lots benefitted from an "express easement for utilities and shared access" to Infiniti's private road that provided "unrestricted rights to ingress and egress" for Sai Laxmi's two adjoining lots.

Sai Laxmi then filed a motion for summary judgment, asserting that it was entitled to summary judgment on its counterclaim for declaratory relief. It argued that the plat records for the three lots, which were referenced in the warranty deeds for all three lots, show as a matter of law that the Sai Laxmi's two lots benefit from a "non-exclusive Easement Appurtenant for Shared Access and Utilities with Rights." In support of its motion, Sai Laxmi offered the affidavit of Vinay Patel, which included the warranty deeds and the plat record referenced in those warranty deeds.

Four days before the hearing on Sai Laxmi's motion for summary judgment, after having unsuccessfully sought a continuance of that hearing, Infiniti nonsuited its claims against Sai Laxmi and filed a response to Sai Laxmi's motion for summary judgment. Infiniti's response

3

asserted that Sai Laxmi was not entitled to summary judgment because the plat did not grant Sai Laxmi's lots an easement for shared access to Infiniti's private road. In support of its response, Infiniti attached the affidavit of its expert, Robert Miller. Sai Laxmi objected to Miller's affidavit, asserting that his testimony was inadmissible because (1) Miller was not qualified to render expert testimony in the case, (2) his underlying methodology was unreliable, and (3) his affidavit contained legal conclusions.

After hearing argument, the district court took the matter under advisement. Ten days after the hearing, on August 20, 2009, the trial court issued an order sustaining Sai Laxmi's objections to Miller's affidavit and granting partial summary judgment in favor of Sai Laxmi on its counterclaim against Infiniti.[1] The trial court found that Sai Laxmi's lots "held an express easement for utilities and shared access along the entirety of [Infiniti's private road]." The trial court notified the parties of its decision in the matter by a letter dated and file marked August 21, 2009.

On August 24, 2009, the parties, apparently unaware of the court's August 20, 2009 ruling, entered into a rule 11 letter agreement regarding various scheduling and discovery matters, including an agreed date for a rehearing on Sai Laxmi's summary-judgment motion. After learning of the summary judgment, Infiniti filed a motion asking the trial court to reconsider its summary judgment and enforce the rule 11 agreement. The trial court did not make an express ruling on either of these two motions, but did grant the parties' agreed motion to sever this case from Infiniti's claims against the zoning board, rendering the trial court's partial summary judgment final. Infiniti appeals.

---

[1] Infiniti's claims against the city remained pending.

4

## DISCUSSION

### Expert-witness affidavit

In its first two issues, Infiniti contends that the trial court erred in finding that its expert-witness affidavit was inadmissible as summary-judgment evidence. The admission and exclusion of expert testimony are matters within the trial court's discretion. *See E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995); *see also City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995) (discussing admission and exclusion of evidence in general). To successfully challenge an evidentiary ruling, the complaining party must show that the judgment turned on the particular evidence being challenged and that the error in admitting or excluding the evidence probably resulted in the rendition of an improper judgment. Tex. R. App. P 44.1(a); *Alvarado*, 897 S.W.2d at 753-54. The evidence at issue consisted of Miller's expert-witness affidavit regarding the proper construction and effect of the relevant plat records. The dispositive issue in this case is whether the plat record created an express easement for shared access to Infiniti's private road. For reasons discussed in greater detail below, we hold that the plat records here are "susceptible to only one reasonable, definite interpretation after applying the rules of contract construction" and thus present purely legal questions. *See Marcus Cable Assocs., L.P. v. Krohn*, 90 S.W.3d 697, 703 (Tex. 2002). As such, the issue in this case is not a matter for which expert-opinion testimony will assist the trier of fact. *See Upjohn Co. v. Rylander*, 38 S.W.3d 600, 611 (Tex. App.—Austin 2000, pet. denied) (expert witness may not testify regarding an opinion on a pure question of law); Tex. R. Evid. 702 (providing that expert witness may testify if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or

5

to determine a fact in issue"). Infiniti makes no showing of how the exclusion of Miller's affidavit probably caused the rendition of an improper judgment, and, after reviewing the summary-judgment record, we conclude any error in excluding the affidavit testimony was harmless. *See* Tex. R. App. P. 44.1. Accordingly, we overrule Infiniti's first and second issues.

**Summary Judgment**

In its third issue, Infiniti argues that the trial court erred in granting Sai Laxmi's summary judgment because it incorrectly interpreted the phrase "U.E. & Shared Access" in the plat records as granting an "express easement for utilities and shared access" to Infiniti's road that benefitted Sai Laxmi's two lots. Infiniti asserts that Sai Laxmi purchased two landlocked lots—i.e., they have no access to the IH-35 frontage over Infiniti's private road—because "shared access" merely indicates the one place—i.e., shared—where these three lots can legally access IH-35, but that Sai Laxmi failed to obtain "appropriate internal access easements" to use the access point.

We review summary judgments de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). A movant is entitled to summary judgment if (1) there are no genuine issues of material fact, and (2) it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). We indulge every reasonable inference and resolve any doubts in favor of the non-movant. *Nixon*, 690 S.W.2d at 548-49.

An easement is a nonpossessory right to use the real property of another. *Marcus Cable*, 90 S.W.3d at 700. An express easement is created by agreement of the parties and is subject to the statute of frauds. *Cummins v. Travis County Water Control & Improvement Dist. No. 17*,

6

175 S.W.3d 34, 51 (Tex. App.—Austin 2005, pet denied). To satisfy the statute of frauds, the written document creating the easement must show the intent of the parties, the essential terms of the easement, and an adequate description of the easement's location. *Id.* No particular words or forms, however, are required to create an easement as long as the language shows the intention to grant or reserve an easement. *Mitchell v. Castellaw*, 246 S.W.2d 163, 166-67 (Tex. 1952). An easement's express terms, which are to be given their plain meaning, define the purposes for which the easement holder may use the property. *Id*.

"We apply basic principles of contract construction and interpretation when considering an express easement's terms." *Marcus Cable*, 90 S.W.3d at 700. The scope of the easement must be determined by the intent of the parties as expressed in the terms of the grant. *Id.* (citing *DeWitt County Elec. Co-op., Inc. v. Parks*, 1 S.W.3d 96, 103 (Tex. 1999)); *see also* Restatement (Third) of Property (Servitudes) § 4.1 (providing that easement "should be interpreted to give effect to the intention of the parties ascertained from the language used in the instrument, or the circumstances surrounding the creation of the servitude, and to carry out the purpose for which it was created"). "When the grant's terms are not specifically defined, they should be given their plain, ordinary, and generally accepted meaning." *Marcus Cable*, 90 S.W.3d. at 701; Restatement (Second) of Contracts § 202(3)(a) ("Unless a different intention is manifested, where language has a generally prevailing meaning, it is interpreted in accordance with that meaning."). "When an easement is susceptible to only one reasonable, definite interpretation after applying established rules of contract construction, we are obligated to construe it as a matter of law even if the parties offer different interpretations of the easement's terms." *Marcus Cable*, 90 S.W.3d. at 703.

7

The plat record at issue here is a professional survey. It was approved by the city and filed of record in the county records. It is titled "Resubdivision of Plat of Lot 1D" and it shows the original lot 1D divided into four lots—1D-1 through 1D-4. The plat shows lot 1D-2's private road as the only permitted access to IH-35 for lots 1D-2, 1D-3, and 1D-4. "U.E. & Shared Access" is written inside the private road and two solid lines extend from that phrase to other areas on the plat: one line extends from the front of the "U" to the boundary line between the private road and lot ID-3; the other line extends from the end of "Shared Access" to the boundary line between the private road and lot ID-4. The only other information regarding the private road on the survey is the width of the private road, which the plat indicates with a line drawn from "A=48.03'" to the boundary between the road and IH-35. The following is a simplified drawing of the survey as discussed here.



Infiniti asserts that the ampersand between the "U.E." and "Shared Access" makes the two phrases "separate and distinct rights." Specifically, Infiniti argues that while "U.E." creates a utility

8

easement over the private road, the term "Shared Access" does not create an easement because "U.E." is separated from that phrase by the ampersand—i.e., the easement does not apply to "shared access." In an argument that we do not fully understand, Infiniti asserts that "Shared Access" only indicates that the three lots "share" the only authorized ingress and egress point to the IH-35 frontage. Infiniti asserts, however, that because Sai Laxmi failed to obtain internal easements necessary to use the access point, Sai Laxmi's lots lack a legal means of accessing the IH-35 frontage—i.e., they are landlocked. Infiniti bases its assertion on the TxDOT's definition of that phrase as a "single connection serving two or more adjoining lots or parcels." *Access Mgmt. Manual* 1-12 (June 2004) (Tex. Dep't of Transp.). We disagree with Infiniti's construction.

Assuming without deciding that TxDOT's definition of "shared access" is somehow applicable to the plat record here, Infiniti's construction is not reasonable given the plat record's placement of and designation for that phrase. The phrase is written inside the boundaries of the private road and has lines extending from each end of the phrase to the boundaries between the lots and the private road. These type of lines are used on this plat to designate the point on the plat to which the information applies, usually because it would not be clear based on the information's placement on the plat. For example, to indicate the width of the private road where it meets IH-35, the plat shows "A=48.03'" written inside Sai Laxmi's 1D-3 lot with a line running from it to the line indicating the boundary between the private road and IH-35. Also, to show the boundary for the 20' utility easement along IH-35 and to indicate the width of the lot 1D-3, which would be otherwise ambiguous given the proximity of this information on the plat, there are separate lines running from "20' U.E." and from "A=202.20'" to the areas of the plat to which they refer. Presumably then, if

9

"Shared Access" means, as Infiniti argues, the entry point along IH-35 for the properties, there would be a line extending from "Shared Access" to the point where the private road intersects IH-35. Instead, the lines extend from each end of the phrase "U.E. & Shared Access" to the boundaries between Sai Laxmi's lots and the private road. This indicates the intent that both "U.E." and "Shared Access" together refer to the entirety of Infiniti's private road.

Infiniti argues that the resubdivision of lot 1D into four lots resulted in lots 1D-3 and 1D-4 being "landlocked"—i.e., without access to a right of way—because Sai Laxmi failed to ensure that, in addition to the shared access to the entrance point to IH-35, it also had access to the private road that would allow it to use that shared access point. In support of its interpretation, Infiniti relies on TxDOT's warnings to purchasers of resubdivided lots. *See Access Mgmt Manual* 2-11 (June 2004) (Tex. Dep't of Transp.). While Infiniti is correct that TxDOT urges purchasers to ensure access to resubdivided lots with shared access points, the plat here does that because the phrase "Shared Access" modifies the sides of the private road and not the point at which the road adjoins IH-35. Thus, the two "landlocked" lots have the right to access IH-35 along the length of the private road; in other words, an easement. *See Marcus Cable*, 90 S.W.3d at 700 (definition of easement). Construing the plat as Infiniti suggests renders the phrase "Shared Access" as used on the plat meaningless. We decline to interpret the plat record in a way that renders a provision meaningless. *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006) (noting that court must "examine and consider *the entire writing* in an effort to harmonize and give effect to *all the provisions* of the contract so that none will be rendered meaningless.").

10

Finally, Infiniti argues that the plat records do not sufficiently identify the easement as required by the statute of frauds. *See AIC Mgmt. v. Crews*, 246 S.W.3d 640, 645 (Tex. 2008) ("To be valid, a conveyance of real property must contain a sufficient description of the property to be conveyed.") The statute of frauds is satisfied, however, as long as the writing "furnishes within itself, or by reference to some other existing writing, the means or date by which the land to be conveyed may be identified with reasonable certainty." *Id.*; *West Beach Marina, Ltd. v. Erdeljac*, 94 S.W.3d 248, 264 (Tex. App.—Austin 2002, no pet.). The plat record here, which is a survey of the property, indicates that the "U.E. & Shared Access" refers to the area inside the boundary lines between Sai Laxmi's two lots and the private road. This is sufficient to satisfy the statute of frauds requirements regarding description of the real property interest. We overrule Infiniti's third issue.

**Rule 11 agreement**

In its final issue on appeal, Infiniti contends that the trial court erred in denying its motion to enforce the parties' rule 11 agreement. The rule 11 agreement was signed after the trial court rendered summary judgment, but prior to the parties' receiving notice of the judgment. When Infiniti learned that the trial court had granted summary judgment on Sai Laxmi's counterclaim, it filed a motion to reconsider the summary judgment and a motion to enforce the rule 11 agreement, asserting that the rule 11 agreement somehow rendered the trial court's grant of summary judgment "moot." The trial court did not rule on either motion.

In addition to the fact that Infiniti fails to provide any support for its assertion that the rule 11 agreement rendered the trial court's summary judgment "moot," Infiniti failed to preserve error on this issue. To preserve error for appellate review, the record must show that the trial court

ruled on or refused to rule on the motion complained of on appeal. *See* Tex. R. App. P. 33.1(a)(2). Although rule 33.1 contemplates that implied rulings may, in certain circumstances, be sufficient to preserve error, there is no indication here that Infiniti requested consideration of its motion to enforce either by submission or oral hearing.

Finally, we would note that under the circumstances presented here—i.e., a rule 11 agreement that contemplates further pre-trial action in a case that, unknown to either party, had already been resolved by the trial court in summary judgment, but which did not agree to disregard a previous dispositive ruling—the trial court did not abuse its discretion in refusing to enforce the agreement. *See Mantas v. Fifth Circuit Court of Appeals*, 925 S.W.2d 656, 659 (Tex. 1996) (trial court's decision to enforce rule 11 agreement reviewed for abuse of discretion). Accordingly, we overrule Infiniti's fourth issue.

## CONCLUSION

Having overruled Infiniti's four issues, we affirm the judgment of the trial court.

_____

David Puryear, Justice

Before Chief Justice Jones, Justices Puryear and Pemberton

Affirmed

Filed: April 8, 2011

12