Affirmed in Part; Reversed
and Remanded in Part; and Majority Opinion and Dissenting and Concurring
Opinion filed August 16, 2011.

 



 



In The

 

Fourteenth Court of
Appeals

                                                                                          



NO. 14-10-00195-CV



 

Charles Seber and Barbara
Seber, Appellants

V.

Union Pacific Railroad
Company, Appellee

 



On Appeal from the 113th
District Court

Harris County, Texas

Trial Court Cause No. 2008-64372



 

MAJORITY OPINION

 

Charles and Barbara Seber sued Union Pacific Railroad
Company contending that it wrongfully removed the Sebers’ private railroad
crossing.  The trial court granted summary judgment in favor of Union Pacific. 
We affirm in part, reverse in part, and remand to the trial court.

BACKGROUND

This dispute centers on the closing of a private
crossing over Union Pacific’s railroad right-of-way, which runs along the
entire southern boundary of the Sebers’ property.  Before it was closed, the
crossing allowed access between the Sebers’ property and Hufsmith-Kuykendahl
Road on the opposite side of the railroad right-of-way.  The Sebers’ property
is landlocked along its northern and eastern boundaries.  The western boundary
abuts Stuebner-Airline Road.  This litigation involves the title history of a formerly
distinct 1.5 acre tract that is now part of the larger parcel of land owned by
the Sebers, and for which the crossing allegedly was constructed.  



We recite these facts to explain generally how the
Sebers came to own the 1.5 acre tract.  Some facts are disputed by the parties,
but any such factual disputes are immaterial to the resolution of this appeal. 
We express no opinion on whether this account of the title history, which is
constructed from the affidavits and property records attached to the parties’
summary judgment filings in the record, is completely accurate as a legal
matter. 

I.         Title History

In 1902, the International and Great Northern Railroad
Company acquired by condemnation a portion of the railroad right-of-way in
question, together with a tract of about 1.5 acres adjoining the northern side
of the right-of-way.  Union Pacific does not dispute that it is the successor
in interest to this entity.  The right-of-way and adjoining 1.5 acre tract were
acquired for the “maintenance, construction and operation” of a railroad and “for
the purpose of laying out and using side tracks, switches, turnouts and for the
erection and maintenance of section houses, depot buildings and other structures
thereon.”  

The 1.5 acre tract was used for a railroad section
house, and a crossing was constructed over the railroad right-of-way to permit
access between the otherwise landlocked 1.5 acre tract and Hufsmith-Kuykendahl
Road.  The 1.5 acre tract subsequently was severed from the remaining property
that had been condemned.  

The severed 1.5 acre tract was conveyed to a number
of different owners until 1981, when it became part of a larger tract owned by
Jo-Way Tool Company.  After that point, the larger tract was conveyed to
various owners until the Sebers acquired it in 1992.    

Union Pacific advised the Sebers in a letter dated
May 16, 2008 that the private crossing would be closed permanently.  Union
Pacific thereafter closed the crossing.[1] 


II.        Procedural
Background

The Sebers filed suit on October 30, 2008, alleging
that removal of the crossing was “wrongful, constituted a trespass, and was
done in derogation of the vested rights of the Sebers.”  The Sebers sought a
declaratory judgment that they are entitled to use the crossing as a right by
deed and a mandatory injunction requiring Union Pacific to replace the
crossing.  The Sebers alternatively sought monetary damages, including
exemplary damages, for (1) inverse condemnation of their right to use the
crossing; and (2) Union Pacific’s interference with their “vested property
rights.”

Union Pacific filed a “Motion for Summary Judgment”
on December 14, 2009, in which it contended that the Sebers cannot prevail in
this suit because (1) the Sebers have no legal right to use the crossing; (2)
Union Pacific’s railroad right-of-way entitles it to exclude the Sebers; (3)
the Sebers’ claims are preempted by federal law; (4) the Sebers’ trespass claim
fails as a matter of law; and (5) the Sebers cannot obtain exemplary damages.  

The Sebers filed a partial summary judgment motion
invoking the traditional summary judgment standard, in which they argued that
(1) the deed conveying the 1.5 acre tract from Union Pacific’s predecessor in
interest to the Sebers’ predecessor in title also conveyed the “right to use”
the crossing as an “appurtenance” to the property; and (2) Union Pacific is
estopped by deed from denying the conveyance of the crossing.  

The trial court signed an order on January 26, 2010 granting
Union Pacific’s December 14 summary judgment motion without specifying the
grounds upon which the trial court acted.  The January 26, 2010 order is final
and appealable because it resolves all claims asserted by the Sebers against
Union Pacific.  See Lehmann v. Har-Con Corp., 39 S.W.3d 191, 205 (Tex.
2001).  The Sebers timely appealed.[2]

ANALYSIS

The Sebers argue in their first issue on appeal that
the trial court erred in granting Union Pacific’s December 14 summary judgment
motion.  The Sebers argue in their second issue that the trial court should
have granted their “competing” partial summary judgment motion on the issue of
their legal entitlement to use the crossing as an “appurtenance” conveyed by
deed.

An appellate court applies de novo review to the
grant of a traditional motion for summary judgment, using the same standard
that the trial court used in the first instance.  Duerr v. Brown, 262
S.W.3d 63, 68 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (citing Valance
Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005)).  A traditional
summary judgment motion may be granted if the motion and evidence show there is
no genuine issue of material fact and the moving party is entitled to judgment
as a matter of law.  Id. (citing Tex. R. Civ. P. 166a(c), and Nixon
v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548 (Tex. 1985)).  When the trial
court’s order granting summary judgment does not specify the grounds upon which
it was granted, appellants must show that each of the independent arguments
alleged in the motion are insufficient to support the order.  Collins v.
Allied Pharmacy Mgmt., Inc., 871 S.W.2d 929, 932 (Tex. App.—Houston [14th
Dist.] 1994, no writ).  

In a traditional motion for summary judgment, the
movant carries the burden of establishing that no material fact issue exists
and that it is entitled to judgment as a matter of law.  M.D. Anderson Hosp.
& Tumor Inst. v. Willrich, 28 S.W.3d 22, 23 (Tex. 2000) (per curiam). 
If the movant satisfies this burden, then the burden shifts to the non-movant
to raise a genuine, material fact issue sufficient to defeat summary judgment. 
Walker v. Harris, 924 S.W.2d 375, 377 (Tex. 1996).  In determining
whether a material fact issue exists to preclude summary judgment, we take as
true all evidence favorable to the non-movant, indulge every reasonable
inference in favor of the non-movant, and resolve any doubts in the
non-movant’s favor.  Id.; Duerr, 262 S.W.3d at 68 (citing Sudan
v. Sudan, 199 S.W.3d 291, 292 (Tex. 2006)). 

I.         Union Pacific’s
December 14 Summary Judgment Motion

In their first issue, the Sebers challenge Union
Pacific’s summary judgment arguments that (1) the Sebers have no legal right to
keep the crossing open; (2) Union Pacific’s railroad right-of-way entitles it
to exclude the Sebers; (3) the Sebers’ claims are preempted by federal law; (4)
the Sebers’ trespass claim is not viable as a matter of law; and (5) the Sebers
cannot obtain exemplary damages.  We review separately each challenge to the
grounds upon which the trial court could have based its summary judgment.  See
Sci. Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 912 (Tex. 1997) (“A motion
for summary judgment must itself expressly present the grounds upon which it is
made, and must stand or fall on these grounds alone.”).[3]

A.        Legal Right to Use Crossing

Union Pacific first argued in its December 14 summary
judgment motion that “[t]he Sebers have no vested property interest or right in
the private crossing.”  Union Pacific contends that (1) the private crossing
was not an “appurtenance” expressly conveyed “by easement or otherwise” to the prior
owners of the 1.5 acre tract; and (2) the Sebers cannot establish an implied
easement because they “cannot establish that the railroad crossing was their
only means of accessing their Property.”  

                        1.         “Appurtenance”

Union Pacific initially asserted that the relevant
deeds make “no reference to a conveyance of any ‘rights, privileges and
appurtenances’ or any reference to an easement.”  As the Sebers pointed out to
the trial court, the deeds state that they convey all “rights, privileges and
appurtenances” or all “rights and appurtenances.”  

The Sebers argue that the crossing is an easement expressly
conveyed as an “appurtenance” by the deed between Union Pacific’s predecessor
in interest and the Sebers’ predecessor in title.

An easement is a non-possessory interest in another’s
property that authorizes the holder to use that property for a particular
purpose.  Marcus Cable Assocs., L.P. v. Krohn, 90 S.W.3d 697, 700 (Tex.
2002).  An easement does not convey the property itself.  Lakeside Launches,
Inc. v. Austin Yacht Club, Inc., 750 S.W.2d 868, 871 (Tex. App.—Austin
1988, writ denied).  For an easement appurtenant to exist either by implication
or in writing, there must be (1) a dominant estate, to which the easement is
attached; and (2) a servient estate, which is subject to the use of the
dominant estate to the extent of the easement granted or reserved.  Drye v.
Eagle Rock Ranch, Inc., 364 S.W.2d 196, 207 (Tex. 1962).

In determining whether an easement has been granted expressly,
we look to the same rules of construction applicable to deeds.  Callejo v.
City of Garland, 583 S.W.2d 925, 927 (Tex. App.—Dallas 1979, writ ref’d
n.r.e.).  Generally, a written instrument is required to validly convey an
estate in land.  See Tex. Prop. Code Ann. § 5.021 (Vernon 2003). Subject
to some exceptions, a writing also is required to create an easement.  Drye,
364 S.W.2d at 203.  

The Sebers argue that they have a right to use
the crossing under Cox v. Campbell, 143 S.W.2d 361 (Tex. 1940), and Moore
v. Energy States, Inc., 71 S.W.3d 796 (Tex. App.—Eastland 2002, pet.
denied), because a conveyance of title to “any and all appurtenances” includes “railroad
rights of way” abutting the property.  The Sebers contend that Union Pacific’s
predecessor expressly conveyed the crossing as a “right-of-way” because the
crossing abuts the 1.5 acre tract conveyed.  

The cited cases do not support this conclusion
because (1) the term “right-of-way” as used in Cox and Moore refers
not to a crossing, but rather to the railroad’s special easement over the owner’s
land on which the railroad is constructed and operated; and (2) these cases
hold only that title to the center of the land underneath and subject to the
railroad right-of-way passes by such a conveyance.  See Cox, 143 S.W.2d at
366 (“[W]here a deed conveys by specific field notes land abutting on a street
or public highway or railroad right of way, it conveys title to the property to
the center of the street, public highway, or railroad right of way. . . .  [P]laintiffs
in error are entitled to recover the land [to the center of and beneath the
railroad right-of-way] in controversy, subject to the rights of the railroad
company.”); Moore, 71 S.W.3d at 798, 800 (determining ownership of strip
of land “along, under, and between” a railroad right-of-way and a [public] road;
land in question was not expressly reserved in the deed conveying abutting
property and was thus conveyed under rule stated in Cox).  

The Sebers do not identify and we have not found any
authority for the proposition that the use of the term “appurtenances”
expressly conveys an easement over an existing railroad crossing.  The trial
court properly could have concluded that the Sebers do not have a “right to
use” the crossing based on the asserted conveyance of an express easement. 
However, this circumstance does not end our inquiry because the Sebers
alternatively argue that they have the right to use the crossing pursuant to an
implied easement.

2.         Implied easement

Even if the private crossing was not an
“appurtenance” expressly conveyed as an easement, the Sebers argue on appeal that
they can rely on an implied easement to establish a vested property interest or
right in connection with the crossing.

We note at the outset that potentially confusing
terminology pertaining to implied easements makes it more difficult to
identify, apply, and analyze the correct governing framework.  Some preliminary
discussion is warranted.  

a.         Overview

An implied easement is an exception to the rule that
easements appurtenant must be created or transferred in writing.  Drye,
364 S.W.2d at 203.  It is “universally recognized” that — “without aid of
language in the deed, and indeed sometimes in spite of such language” — the
circumstances surrounding an owner’s conveyance of part of a previously unified
tract of land may cause an easement to arise between the two new parcels.    Mitchell
v. Castellaw, 246 S.W.2d 163, 167 (Tex. 1952).  Such an implied easement
may arise in favor of the parcel granted (an implied grant), or in favor of the
parcel retained by the grantor (an implied reservation).  Id.  “The
basis of the doctrine is that the law reads into the instrument that which the
circumstances show both grantor and grantee must have intended, had they given
the obvious facts of the transaction proper consideration.”  Id.  

There are two forms of implied easement in Texas. 
The first is an easement by necessity, commonly called a “way of necessity.”  See,
e.g., Koonce v. Brite Estate, 663 S.W.2d 451, 452 (Tex. 1984);
Duff v. Matthews, 311 S.W.2d 637, 640 (Tex. 1958).  An easement by
necessity is implied when the conveyed or retained parcel cannot be accessed
except by traveling over the remaining tract of land.  See Koonce, 663
S.W.2d at 452 (citing Bains v. Parker, 182 S.W.2d 397 (Tex. 1944)).  An
easement by necessity has three requirements: (1) unity of ownership of both
parcels prior to separation; (2) access must be a necessity and not a mere
convenience; and (3) the necessity must exist at the time of severance.  Id.
(citing Duff, 311 S.W.2d at 641).        

A second type of implied easement is based on prior
use of the land and is called an easement implied from a “quasi-easement.”  See,
e.g., Drye, 364 S.W.2d at 207–08; Ulbricht v. Friedsam, 325
S.W.2d 669, 676–77 (Tex. 1959).  The Texas Supreme Court has identified the
circumstances under which such an easement may be implied:

            If an owner used
one part of his land for the benefit of another portion of his own land, the
portion served had a ‘quasi-dominant tenement’ [and] [t]he portion which was
used was subject to a ‘quasi-servient tenement.’ . . .  [W]hen the owner, under
those circumstances, sold the portion of his land which had [made] use of the
other portion — as for drainage, support, way, or water [— and that use was]
apparent, continuous, and necessary to the use of the ‘dominant’ land sold, the
courts presumed that the necessary use of the ‘servient’ tract passed by
implication to the purchaser.

Drye, 364 S.W.2d at
207.  A party claiming an easement by prior use must prove that at the time of
the severance: (1) both parcels were under unified ownership; (2) the use was
apparent; (3) the use was continuous; and (4) the use was necessary to the use
of the dominant estate.  Drye, 364 S.W.2d at 207–08; see also Bickler
v. Bickler, 403 S.W.2d 354, 357 (Tex. 1966).

Texas courts routinely refer to implied easements
based on prior use characteristics simply as “implied easements.”  See Mack
v. Landry, 22 S.W.3d 524, 530 (Tex. App.—Houston [14th Dist.] 2000, no pet.)
(distinguishing between “easement by necessity” related to inaccessible tract
of land and “implied easement” based on prior use characteristics); see also
State v. Beeson, 232 S.W.3d 265, 273 n.7 (Tex. App.—Eastland 2007, pet.
dism’d) (noting that the plaintiffs’ assertion of an implied easement was
raised under theory of easement by necessity and was not governed by standards
for “implied easement” based on prior use characteristics).  The general term “implied
easement” is potentially confusing because, by definition, both an easement by
necessity and an easement by prior use are implied.  See Othen v. Rosier,
226 S.W.2d 622, 626 (Tex. 1950); see also Beeson, 232 S.W.3d at 273 n.7;
Mack, 22 S.W.3d at 530.[4] 
      

b.         Summary judgment
arguments

We first analyze the parties’ arguments to ensure
that we review the summary judgment grounds according to the appropriate rules
explained above.

Union Pacific argued in its summary judgment motion
that the Sebers could not establish their right to use the crossing pursuant to
an “implied easement” because an easement by necessity no longer was strictly
necessary when the 1.5 acre tract became part of the larger tract of land accessible
via Stuebner-Airline Road.  The Sebers argued in response and on appeal that
(1) their claim is for an “implied easement” by prior use rather than an
easement by necessity; (2) they are required to show reasonable rather than
strict necessity; and (3) the evidence presents a fact issue precluding summary
judgment on whether the crossing is “reasonably necessary” to the use and
enjoyment of the land.      

The “strict necessity” requirement applies to an
implied reservation of an easement, and the “reasonable necessity” requirement applies
to an implied grant of an easement.  See Houston Bellaire, Ltd. v. TCP LB
Portfolio I, L.P., 981 S.W.2d 916, 921 (Tex. App.—Houston [1st Dist.] 1998,
no pet.) (citing Mitchell, 246 S.W.2d at 168, and Howell v. Estes,
12 S.W. 62, 63 (Tex. 1888)).  This rule applies to the element of necessity
that is relevant to easements by necessity and to easements by prior use.  See
Mitchell, 246 S.W.2d at 168 (applying strict necessity rule from “way of
necessity” precedent to claim involving reserved easement by prior use); see
also Howell, 12 S.W. at 62–63 (“We think the weight of authority sustains
the proposition that if an improvement [meets the requirements of an easement by
prior use], the use of such improvement will pass as an easement, although it
may not be absolutely necessary to the enjoyment of the [benefitted] estate
conveyed.”).  The Sebers correctly assert that if the right to use the crossing
was conveyed as an impliedly granted easement, then they need show only reasonable
necessity.  See Mitchell, 246 S.W.2d at 168; Howell, 12 S.W. at
62–63.

An easement by necessity is temporary; it continues
only so long as the necessity exists and terminates upon the cessation of the
necessity.  Bains, 182 S.W.2d at 399.  Under this rule, a grantee must establish
that its use of the easement continues to be “reasonably necessary” to its use
of its property.  See id.  However, the Sebers expressly deny that they
claim an easement by necessity; therefore, they need not establish that their
use of the crossing continues to be reasonably necessary to their use of their
larger tract of land.  The dispute here centers on an easement by prior use.  We
have not identified and the parties do not cite any Texas authority applying
this “continued necessity” rule to an otherwise valid implied easement by prior
use.  Cf. Zapata Cnty. v. Llanos, 239 S.W.2d 699, 702 (Tex. Civ.
App.—San Antonio 1951, writ ref’d n.r.e.) (“‘A presumption frequently invoked
[as justification for easements by prior use is] that the parties contracted
with a view to the condition of the property as it actually was at the time of
the transaction, and after sale neither party without the consent of the other
has a right to change, to the detriment to the other, that condition which
openly and visibly existed. . . .  The rule itself, since it presupposes the
existence of quasi easements, must be distinguished from the principle which underlies
the creation of ways of necessity.’”) (quoting Miles v. Bodenheim, 193
S.W. 693, 696 (Tex. Civ. App.—Texarkana 1917, writ ref’d)).  

Applying the “continued necessity” rule to easements by
prior use would contradict the principle that the existence of such an easement
depends only on the situation of the parties at the time of severance.  See Westbrook
v. Wright, 477 S.W.2d 663, 665–66 (Tex. Civ. App.—Houston [14th Dist.]
1972, no writ) (“Whether these requirements are met is to be determined at the time
the grantor, the one imposing the quasi easement on one portion of his property
for the benefit of another portion, conveys away the dominant tenement, that
portion benefitted, and retains the servient tenement.”); see also Daniel v.
Fox, 917 S.W.2d 106, 110 (Tex. App.—San Antonio 1996, writ denied) (“The
situation of the parties at the time of the [partition] constitutes the
operative facts to support the claim [of an impliedly granted easement based on
prior use characteristics].”); Hoak v. Ferguson, 255 S.W.2d 258, 260
(Tex. Civ. App.—Fort Worth 1953, writ ref’d n.r.e.) (same).       

Union Pacific’s argument fails under this
understanding of an implied easement by prior use.  Union Pacific argues that
the Sebers had to show continued strict necessity after the 1.5 acre tract
became part of the larger tract currently owned by the Sebers.  We disagree.  The
Sebers are required to prove reasonable necessity to establish their right to
use the crossing pursuant to the grant of an implied easement by prior use.  The
relevant timeframe for proving reasonable necessity is the point at which the
1.5 acre tract was severed.[5] 
Union Pacific does not challenge the Sebers’ ability to show that use of the
crossing was reasonably necessary at that time.  Accordingly, summary judgment was
not proper on this ground.[6] 


We hold that the grounds asserted in Union Pacific’s
December 14 summary judgment motion did not establish as a matter of law that
the Sebers are foreclosed from invoking a right to use the crossing pursuant to
an implied easement by prior use.

B.        Entitlement to Exclude from Right-of-Way

Union Pacific argued in its summary judgment motion
that it lawfully closed the crossing because railroads have the right to
exclude all activities that are inconsistent with railroad purposes, citing Ft.
Worth & D.C. Ry. Co. v. Craig, 176 S.W. 827, 829 (Tex. Civ. App.—Fort
Worth 1915, no writ).  Union Pacific claimed that it was entitled to close the
crossing because (1) at least one accident has taken place at the crossing over
the “heavily travelled” right-of-way; and (2) trespassers “regularly cross[]
the railroad right-of-way [at the crossing] to dump trash and commit
vandalism.”  

The Sebers argue in response and on appeal that the
authorities cited by Union Pacific do not entitle it to judgment as a matter of
law on this issue.  They contend that Craig stands for the proposition
that a railroad may erect a fence to exclude trespassers from its right-of-way,
just as it may exclude owners of the land underlying the right-of-way if the
owners use it in a manner inconsistent with railroad purposes.  See Craig,
176 S.W. at 829.[7] 
A railroad may take reasonable steps necessary to effect this purpose “even
though the title in fee to the land occupied as a right of way [is] not vested
in the railway company.”  Id.  

Craig does not advance Union Pacific’s
argument.  If the Sebers can show their right to use the crossing pursuant to
an implied easement by prior use, then they are not trespassers; further, Union
Pacific cites no case in which this rule has been applied to allow a railroad to
exclude holders of an easement across the railroad right-of-way conveyed by
deed.  The trial court’s summary judgment could not have been properly based on
Union Pacific’s argument that it was entitled to exclude the Sebers.[8]

C.        Federal Preemption

Union Pacific argued that it was entitled to summary
judgment because the Sebers’ claims were preempted by federal law.  It stated:

Union Pacific
is entitled to summary judgment on the Sebers’s [sic] claims because they are
preempted by federal law.  In 1995, Congress passed the Interstate Commerce
Commission Termination Act (“ICCTA”).  Pub. L. No. 104-88, 109 Stat. 803.  The
law abolished the Interstate Commerce Commission and created the Surface
Transportation Board, which regulates rail transportation in the United
States.  Id. at § 101 (“The Interstate Commerce Commission is
abolished”); see Friberg v. Kansas City S. Ry. Co., 267 F.3d 439, 442
(5th Cir. 2001).  The ICCTA impliedly preempts the Sebers’s [sic] claims. 
Under conflict preemption, state laws are impliedly preempted when they are
obstacles to accomplishing Congress’s “full purposes and objectives.”  English
v. Gen. Elec. Co., 496 U.S. 72, 79 (1990).

The Fifth Circuit resolved
this issue in the Sebers’ favor several weeks before the trial court granted
summary judgment.  See Franks Inv. Co. LLC v. Union Pac. R.R. Co., 593
F.3d 404, 413, 415 (5th Cir. 2010) (en banc) (owner’s action seeking to enjoin
railroad from closing private railroad crossings not expressly preempted by
ICCTA because routine crossing disputes do not substantially interfere with
railroad operations; no implied preemption exists in the absence of evidence
that specific crossings unreasonably burdened or interfered with rail
transportation); see also 49 U.S.C. § 10401(b) (2006).  

The Fifth Circuit’s rationale applies with equal
force here.  Accordingly, the trial court’s summary judgment could not have
been properly based on Union Pacific’s argument that the Sebers’ claims are
preempted by federal law.

D.        Remaining Issues

The remaining issues concern grounds that would
entitle Union Pacific only to partial summary judgment if granted.  When a
properly appealable summary judgment encompasses both grounds for full summary
judgment and for partial summary judgment, we can consider all matters raised
and reverse only those portions of the judgment that were rendered in error.  Page
v. Geller, 941 S.W.2d 101, 102 (Tex. 1997) (per curiam) (citing Bandera
Elec. Coop., Inc. v. Gilchrist, 946 S.W.2d 336, 337 (Tex. 1997) (per
curiam)).  Considering the merits of the grounds for partial summary judgment
under these circumstances avoids “the needless relitigation of decided issues
and thus promote[s] judicial economy.”  See Bandera, 946 S.W.2d at 337.   

1.         Viability of trespass
claim

Union Pacific contends that the evidence conclusively
establishes that the Sebers cannot prevail on their trespass claim, stating:
“Here, the Sebers admit that no Union Pacific employee entered onto any area
outside the right-of-way without consent.  Rather, the sole basis for their
allegation of trespass is that they own the land under the right-of-way from
the center of the track.”  (emphasis added).

In support of this argument, Union Pacific quoted
from the deposition of Charles Seber, who testified:

Q.  Okay.  You’ve said that Union Pacific people came on
your property and trespassed onto your property, right?

A.  Yeah, when they cross the track.

Q.  Okay.  When they cross the track?

A.  Right, when they cross the track.

Q.  When they cross the track you mean by way of the
right-of-way?

A.  Right.

Q.  Okay.  The right-of-way is a hundred feet wide, right?

A.  Uh-huh.

Q.  “Yes”?

A.  Well, I’m talking about the center of the track.

Q.  Okay.  But, to your knowledge, the only place that
Union Pacific people have ever been has been within the hundred foot
right-of-way, correct?

A.  Right.

Q.  Have they ever come onto any other part of your
property, besides the right-of-way?

A.  I don’t think so.

Q.  To your knowledge, they have not?

A.  I don’t think.

Q.  And is it your contention that Union Pacific trespassed
on your property based on your contention that you own the land under —

A.  Right.

Q.  — the tracks?

A.  Right.

Q.  Are you claiming that the right-of-way is not valid?

A.  I don’t — I believe it would be included.

Q.  You believe it would be included in what?

A.  That they don’t own [sic].

Q.  Okay.  Do you — are you claiming that Union Pacific
doesn’t have the right to use the right-of-way?

A.  Well, I’m not claiming — they are using it, and they
may continue to use it.  Now, right or wrong, you know, I couldn’t answer
that.  If it’s not theirs, then, they are trespassing.

Q.  And that is the only trespass you are claiming, is that
they have come onto the right-of-way area —

A.  Right.

Q.  — and not that they have come onto any other area of
your property?

A.  Right.

(emphasis added).  Union
Pacific argued: 

Under Texas
law, the condemnor of an easement in land is entitled at all times to have
access to and use of the land as necessary to enable it to perform the duties
involved in the purpose of the condemnation.  The decree of condemnation
creating the railroad easement at issue herein specifically recites that the
easement is condemned to the use of the railroad “for the maintenance,
construction and operation of its railroad.”  Union Pacific entered onto its
right-of-way and removed the crossing as a part of its maintenance of the
railroad.

The Sebers do not dispute
that the trespass claim rests solely on the Sebers’ contention that Union
Pacific trespassed by entering the right-of-way over land owned by the Sebers. 
The Sebers argued to the trial court that the actions Union Pacific took within
the right-of-way to remove the crossing constituted a trespass because they
“do[] not constitute maintenance of the railroad.”  The Sebers do not reurge
this argument on appeal, and we do not consider it.  

The Sebers argue on appeal that “the Railroad cannot
simply claim that it stayed on its right of way and therefore did not commit a
trespass, when the Property (and the appurtenant crossing) was conveyed by the
Railroad’s predecessor.”  This argument apparently is rooted in the Sebers’
theory that they own or possess the crossing itself instead of an easement allowing
them to utilize it.  The Sebers do not identify and we have not located any
authority characterizing a landowner’s interest in a railroad crossing as
anything other than a right to utilize the crossing by virtue of an easement.    

Property ownership or a right to physical possession
of real property is a necessary element of a trespass claim.  See Tex.
Women’s Univ. v. The Methodist Hosp., 221 S.W.3d 267, 286 (Tex.
App.—Houston [1st Dist.] 2006, no pet.) (“To recover damages for trespass to
real property, a plaintiff must prove that . . . the plaintiff owns or has a
lawful right to possess real property . . . .”).  An easement is a
non-possessory interest in land.  See Marcus Cable Assocs., L.P.,
90 S.W.3d at 700; Lakeside Launches, Inc., 750 S.W.2d at 871.  Accordingly,
we affirm the trial court’s grant of summary judgment on the trespass claim
based on the Sebers’ argument that they own or possess the crossing itself.  See
Collins, 871 S.W.2d at 932 (appellants must show that each of the
independent arguments alleged in the motion are insufficient to support the
summary judgment).       

2.         Entitlement to
exemplary damages

Union Pacific argues that it is entitled to summary
judgment on the Sebers’ exemplary damages claim.  It contends that the Sebers
cannot establish that Union Pacific subjected itself to exemplary damages by
removing the crossing because (1) the evidence conclusively negates the Sebers’
allegation that Union Pacific acted with statutory “malice;” (2) the Sebers can
produce no evidence showing that Union Pacific acted with statutory “malice;” and
(3) the Sebers can produce no evidence of a “substantial likelihood of
significant injury.” 

Generally, exemplary damages may be awarded only if
the claimant proves by clear and convincing evidence that the harm at issue
results from (1) fraud; (2) malice; or (3) gross negligence.  See Tex.
Civ. Prac. & Rem. Code Ann. § 41.003(a) (Vernon 2008).  The Sebers do not
allege fraud or gross negligence; therefore, we address only statutory malice. 


Malice is defined in this context as “specific intent
by the defendant to cause substantial injury or harm to the claimant.”  See
id. § 41.001(7) (Vernon 2008).  Specific intent means that the actor
desires to cause the consequences of his act, or that he believes the
consequences are substantially certain to result from it.  Reed Tool Co. v.
Copelin, 689 S.W.2d 404, 406 (Tex. 1985).  Malice may be proven by direct
or circumstantial evidence.  KPH Consolidation, Inc. v. Romero, 102
S.W.3d 135, 144 (Tex. App.—Houston [14th Dist.] 2003), aff’d, 166 S.W.3d
212 (Tex. 2005).         

Union Pacific argues that as a matter of law the
Sebers cannot obtain exemplary damages because the evidence conclusively
negates the Sebers’ assertion that Union Pacific acted with the specific intent
to cause substantial injury or harm.  See Tex. Civ. Prac. & Rem.
Code Ann. § 41.001(7).  To meet its summary judgment burden under Rule 166a(c),
Union Pacific proffered deposition testimony from Charles Seber and Union
Pacific manager Doug Woods; both testified that Union Pacific verified before
closing the crossing that the Sebers have alternative access to their property
via Stuebner-Airline Road.

In response, the Sebers argue that they “made clear
to the Railroad the harm to their property that would result from the closing
of the crossing. . . .  The Railroad even acknowledged that harm by offering to
discuss payment for the construction of new alternat[ive] access to the
property.”  The Sebers claim that Union Pacific closed the crossing despite the
Sebers’ opposition and Union Pacific’s awareness that “negative consequences” would
result, forcing the Sebers to use less convenient access via Stuebner-Airline Road. 
Barbara Seber testified:

Q. In your petition you say that the acts of Union Pacific
were intentional, willful, and malicious.  Tell me what you mean by that.

A. Well, I
think that after we met with Mr. Woods, he should have gone back to the bosses
and . . . said, “I think these people may have a good claim that goes back to
1902 pertaining to this crossing.  I think we need to make sure that we, the
Railroad, have the right to inconvenience these people by removing that
crossing, before it ever gets to court.  Let’s have our talks before we remove
the crossing.”

            We met with Doug
Woods one time, and the next thing the crossing was gone.  They just assumed
they had the right to do what they wanted to do because they were the Railroad. 
And I think we should have discussed it more than once before they jumped in
there and removed it and inconvenienced us.

Q. So the behavior that you’re
claiming was willful, malicious, and intentional was the decision to go ahead
and close the crossing?

A. Yeah, without a second —
you know, without a second get-together.

We conclude that this record establishes as a matter
of law the absence of specific intent to cause substantial injury or harm; evidence
of a purposeful restriction of access to land that merely makes ingress and
egress less convenient does not raise a material fact issue regarding a
“substantial injury.”  Cf. Shed, L.L.C. v. Edom Wash ‘N Dry, L.L.C.,
No. 12-07-00431-CV, 2009 WL 692609, at *8–9 (Tex. App.—Tyler Mar. 18, 2009,
pet. denied) (mem. op.) (no jury could form a firm conviction that defendant
acted with specific intent to cause substantial injury or harm based on
evidence of defendant’s interference with and purposeful restriction of
easement used to access plaintiff’s property; “[E]ven proof of an intent to
unreasonably restrict an access easement is not proof of malice. . . .  While
blocking a more direct walking path and having a small opening in the fence for
vehicular traffic might demonstrate an intent to cause injury, the requirement
is substantial injury.”). 

We also reject any suggestion that Union Pacific’s
awareness of a dispute about the Sebers’ legal entitlement to use the crossing,
and that the Sebers were opposed to removal of the crossing, amounts to malice. 
Cf. Kinder Morgan N. Tex. Pipeline, L.P. v. Justiss, 202 S.W.3d 427,
448–49 (Tex. App.—Texarkana 2006, no pet.) (reversing exemplary damages based
on claim that defendant maliciously encroached on property found to have
already been adversely possessed by plaintiff; evidence showed that defendant
knew ownership of the property was in dispute, but record contained no evidence
that defendant knew it was without rights to the encroached-upon property).[9] 
Summary judgment on the Sebers’ exemplary damages claim was proper.

We affirm the trial court’s summary judgment as to
the Sebers’ claim for exemplary damages based on malice.          

II.        The Sebers’
Partial Summary Judgment

The Sebers argue in their second issue on appeal that
we may consider their partial summary judgment motion because it was a
“competing” summary judgment motion.  

We may consider summary judgment evidence from both
sides, determine all questions presented, and render the judgment the trial
court should have rendered if (1) both parties file summary judgment motions,
and (2) the court grants one and denies the other.  See Dorsett, 164
S.W.3d at 661.  This rule applies only when both parties seek final relief in
their cross-motions for summary judgment.  See CU Lloyd’s of Tex. v. Feldman,
977 S.W.2d 568, 569 (Tex. 1998) (per curiam).  

However, we properly may render partial summary judgment
on liability alone when the relief sought is a declaratory judgment.  Id.
(citing Bowman v. Lumberton Indep. Sch. Dist., 801 S.W.2d 883, 889–90
(Tex. 1990)).[10] 
The Sebers seek relief in the form of a declaratory judgment regarding their
right to use the crossing.  They argue that (1) the deed conveying the 1.5 acre
tract from Union Pacific’s predecessor to the Sebers’ predecessor expressly
conveyed the “right to use” the crossing as an “appurtenance” to the property;
and (2) based on this express conveyance, Union Pacific is estopped by deed
from denying the conveyance of the crossing.  

  Assuming we may properly reach the merits of the
Sebers’ partial summary judgment motion because the Sebers seek relief in the
form of a declaratory judgment, their motion depends on the following argument regarding
the Sebers’ alleged right to use the crossing: 

The
[relevant] deed transferred the 1.5 acre tract, together with all rights and
appurtenances with respect to such tract. This included the right to use the
railroad crossing.  Moore v. Energy States, Inc., 71 S.W.3d 796, 800
(Tex. App.—Eastland 2002, pet. den. [sic]).

This argument is an
abbreviated version of the argument we rejected in section I.A. of our analysis,
and we do not address it again.  We overrule appellant’s second issue.

CONCLUSION

In addressing the Sebers’ first issue, we (1) overrule
the Sebers’ arguments regarding summary judgment on their trespass and
exemplary damage claims; and (2) sustain the Sebers’ arguments regarding Union
Pacific’s remaining summary judgment grounds asserted in its December 14
“Motion for Summary Judgment.”  We overrule the Sebers’ second issue.

We therefore (1) affirm the trial court’s January 26,
2010 summary judgment order with respect to the Sebers’ trespass and exemplary
damages claims; (2) reverse the trial court’s January 26, 2010 summary judgment
order with respect to all other claims asserted by the Sebers in their Original
Petition; and (3) affirm the trial court’s denial of the Sebers’ partial
summary judgment motion.  We remand this case to the trial court for further
proceedings consistent with this opinion.  

 

                                                                                    

                                                            /s/                    William
J. Boyce

                                                                                    Justice

 

 

Panel consists of Justices Brown,
Boyce, and Jamison. (Jamison, J., dissenting and concurring).









[1]
Union Pacific manager Doug Woods explained at his deposition: “[A] crossing
usually consists of some type of planking surface, concrete, timber, asphalt,
something like that, on top of the track structure.  Then there’s a roadway
approach that touches that. So [in closing a crossing] we would traditionally
remove the planking and pull the roadway back to open the ditches up if there
are ditches there. . . .  The crossing boards are removed and set either side
of the track blocking the crossing.  That’s all we did at that time.”





[2]
Union Pacific also filed a “Motion for No-Evidence Summary Judgment” on
December 15, 2009, invoking the no-evidence standard under Rule 166a(i).  Union
Pacific argued in its December 15 motion that the Sebers could produce no
evidence to support (1) injunctive relief; (2) inverse condemnation; (3)
trespass; and (4) exemplary damages.  The Sebers assume and Union Pacific
asserts on appeal that we should review the trial court’s order granting summary
judgment in light of arguments made by Union Pacific in both its December 14
and December 15 motions.  Each motion was accompanied by a different and
specific proposed order; one order referenced only Union Pacific’s December 14
“Motion for Summary Judgment,” and the other order referenced only Union
Pacific’s December 15 “Motion for No-Evidence Summary Judgment.”  When a party files
summary judgment motions containing both traditional and no-evidence grounds,
and the trial court grants summary judgment without specifying which motion or arguments
it relied upon in doing so, we review both motions and all accompanying summary
judgment proof.  See Nardini v. Cont’l Airlines, Inc., 60 S.W.3d 197,
200–01 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).  However, this
record clearly demonstrates that the trial court signed only the proposed order
accompanying Union Pacific’s December 14 summary judgment motion; the signed
order shows the same original document filepath and district clerk file stamp
as the proposed order that was filed with the motion referenced by specific
title in the order.  The trial court did not sign the proposed order
accompanying the December 15 no-evidence summary judgment motion, and there is
no indication in the record that the trial court ruled on it.  Accordingly, we
review only the arguments that were raised in the December 14 summary judgment
motion.





[3]
Union Pacific argues on appeal that we may affirm the trial court’s judgment
because (1) the 1.5 acre tract no longer was being used for its condemned
purpose and “reverted back to the original landowner” before Union Pacific’s predecessor
attempted to convey the property; and (2) Union Pacific’s predecessor therefore
could not have conveyed any easement over the railroad right-of-way.  This
argument was not presented to the trial court in Union Pacific’s written
motion, and we do not consider it on appeal.  See Sci. Spectrum, Inc.,
941 S.W.2d at 912.





[4]
Where possible, we shall refer to “easements by necessity” and “easements by
prior use.”





[5]
The parties disagree about whether the crossing still was necessary when the
Sebers became owners of the larger tract of land.  This disagreement is
immaterial to the resolution of this appeal, and we express no opinion
regarding reasonable necessity once the Sebers became owners.





[6]
Union Pacific argues on appeal that we should uphold the summary judgment
because the Sebers produced no evidence of “apparent” or “continuous” prior use
of the crossing.  The Sebers’ ability to produce evidence of these elements of
an implied easement by prior use was not challenged in Union Pacific’s December
14 summary judgment motion.  Union Pacific did challenge the Sebers’ ability to
present “competent evidence to support the pre-existence of the crossing prior
to the Sebers ownership of the land,” but this argument was raised for the
first time in its reply to the Sebers’ summary judgment response, and we do not
consider it on appeal.  See Sanchez v. Mulvaney, 274 S.W.3d 708, 711
(Tex. App.—San Antonio 2008, no pet.) (“[A] movant may not use a reply brief to
meet the specificity requirement [of Rule 166a] or to assert new grounds for
summary judgment.”) (citing Community Initiatives, Inc. v. Chase Bank of
Tex., 153 S.W.3d 270, 280 (Tex. App.—El Paso 2004, no pet.); Callaghan
Ranch, Ltd. v. Killam, 53 S.W.3d 1, 4 (Tex. App.—San Antonio 2000, pet.
denied); and Sams v. N.L. Indus., Inc., 735 S.W.2d 486, 487–88 (Tex.
App.—Houston [1st Dist.] 1987, no writ)).





[7]
Union Pacific also cited Gulf, Colo. & Santa Fe Ry. Co. v. Candler,
40 S.W.2d 915, 917 (Tex. Civ. App.— Dallas 1931), aff’d, 61 S.W.2d 997
(Tex. Comm’n App. 1933), in which the court reviewed a trial court’s ruling
that property within the railroad’s right-of-way may be acquired by the adverse
possession of another.  See Candler, 40 S.W.2d at 916–917.  Candler
is not germane to Union Pacific’s argument.





[8]
Union Pacific additionally argued that it can exclude the Sebers because “the
owner of the fee underlying the railroad . . . has no right to occupy the
surface of the land conveyed for right-of-way.”  The Sebers’ trespass claim is
the only claim that potentially would depend on the Sebers’ alleged ownership
of the surface estate beneath the railroad right-of-way.  Because we dispose of
the Sebers’ appeal from the trial court’s summary judgment on the trespass
claim on other grounds, we do not address this additional argument made by
Union Pacific.  





[9]
The Sebers also argue that Union Pacific’s actions were undertaken with
“conscious indifference” to the harm that “would befall the Sebers if the
crossing were removed.”  This argument relies on a pre-2003 definition of
malice found in section 41.001(7), which included an alternative gross
negligence component; this component was recodified in 2003 as the separate
definition for “gross negligence” under 41.001(11).  See Act of April
11, 1995, 74th Leg., R.S., ch. 19, § 1, 1995 Tex. Gen. Laws 108, 109, formerly
Tex. Civ. Prac. & Rem. Code § 41.001(7)(B) (“‘Malice’ means: (A) a specific
intent by the defendant to cause substantial injury to the claimant; or (B) an
act or omission: (i) which when viewed objectively from the standpoint of the
actor at the time of its occurrence involves an extreme degree of risk,
considering the probability and magnitude of the potential harm to others; and
(ii) of which the actor has actual, subjective awareness of the risk involved,
but nevertheless proceeds with conscious indifference to the rights, safety, or
welfare of others.”); Act of June 2, 2003, 78th Leg., R.S., ch. 204, §§ 13.02,
23.02(a), (d), 2003 Tex. Gen. Laws 847, 887, 898–99 (applicable to actions
filed on or after September 1, 2003; retaining similar version of paragraph (A)
as definition for “malice” under 41.001(7) and recodifying paragraph (B) as
definition for “gross negligence” under 41.001(11)); see also Dillard Dep’t.
Stores, Inc. v. Silva, 148 S.W.3d 370, 373 (Tex. 2004) (describing
paragraph (B) of pre-2003 definition of malice as “an alternative gross
negligence component” of malice).  The Sebers’ exemplary damages claim is based
on their allegation that Union Pacific’s removal of the crossing was
“intentional, willful and malicious.”  The Sebers do not allege that Union
Pacific was grossly negligent.  Even if we considered this alternative
definition, the trial court did not err in sustaining Union Pacific’s ground
for summary judgment.  See Smith v. O’Donnell, 288 S.W.3d 417, 424 (Tex.
2009).    





[10]
Union Pacific argues that we should not reach the merits of the Sebers’ partial
summary judgment motion because the trial court granted summary judgment before
Union Pacific’s response to the Sebers’ motion was due.  We do not address this
argument because we resolve the Sebers’ issue on other grounds.